## Seelar, Appellant, *v.* East End Mantel & Tile Company.

*Mechanic's lien—Names of owners—Trustees.*

1. A mechanic's lien will not be stricken off because the real owner was not named nor served, where it appears that the lien was filed against a person named "et al., trustees of" another person named, as owners, and was served on the trustee named, and the affidavit of defense does not disclose the name of the cestui que trust, but merely avers that the trustee named and two others named were "trustees as aforesaid, the real owners.".

*Mechanic's lien—Consent of owner—Use and benefit of owner—Acts of June 4, 1901, P. L. 431.*

2. A mechanic's lien will be stricken off where it does not appear that any consent was given by the owner to a tenant for the improvement for which the lien was filed, or that any writing had been signed by the owners setting forth that the improvement was made for the owner's immediate use and benefit.

3. A mechanic's lien for an improvement contracted for by a tenant cannot be sustained by a mere averment by the claimant that one of his men had asked one of the owners if it would be all right to go ahead with the work, and that said owner responded that it would, where the name of the owner is not given, and there is no averment that the plaintiff had knowledge of such statement, or had been induced by it to do the work, and it appears that the written consent given by the owner to the tenant granted long after the date of the lease, stipulated that the improvement should be made at the cost and expense and for the benefit of the tenant, and that the tenant should not suffer or permit any mechanics' liens to be filed against the premises.

4. Where it is averred and not denied that trustees under a deed had authority to make an improvement and thereby charge the estate with a lien for the cost and expense thereof, it is not necessary to set forth in the lien that the work was done and materials furnished under authority contained in the deed. ·

*Constitutional law—Mechanic's lien—Special law—Article 3, sec. 7, of the constitution of Pennsylvania—Act of June 4, 1901, sec. 34, P. L. 431.*

5. Section 34 of the Act of June 4, 1901, P. L. 431, providing that "the defendant may by rule require plaintiff to reply under oath or affirmation to the statements set forth in the affidavit of defense, and after the replication has been filed, rule for judgment upon the whole record" is not a special law "providing or changing methods for the collection of debts, or enforcing of judgments" within the prohibition of sec. 7, of art. 3 of the constitution of Pennsylvania.

Argued April 30, 1914.    Appeal, ·No. 127, April T., 1914, by plaintiff, from order of C. P. Allegheny Co., Jan. T., 1913, striking off mechanic's lien in case of J. J. Seelar, doing business as Seelar Elevator Works, v. East End Mantel & Tile Company, Lessee, and James R. Mellon et al., Trustees of Thomas Mellon, deceased, owners or reputed owners.    Before RICE, P. J., HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.    Affirmed.

Rule to strike off mechanic's lien.    . . . ..  .. ..   .. . ..

FORD, J., filed the following opinion:

On July 17, 1911, the plaintiff filed a mechanic's lien at No. 11, September Term, 1911, upon which he subsequently issued a scire facias. The defendant filed an affidavit of defense and entered a rule upon the plaintiff to reply to the statements therein set forth. The plaintiff filed a replication and the defendant moved for judgment on the whole record.

The procedure is in pursuance of sec. 34 of the Act of June 4, 1901, P. L. 431, which provides, inter alia, "The defendant may by rule require plaintiff to reply under oath or affirmation to the statements set forth in the affidavit of defense and after the replication has been filed rule for judgment upon the whole record."

The defendant contends that the mechanic's lien is fatally defective for the following reasons:

1. The real owner of the land and building against which the lien was filed was not made a party to the mechanic's lien nor served with notice of the filing of the lien.

2. It does not appear from the mechanic's claim filed that any consent was given by the owners to the tenant or that any writing had been signed by the owners setting forth that the improvement was made for the owners' immediate use and benefit.

3. The mechanic's lien does not aver that the contract under which the work was done was made under authority of the court or any power contained in any deed or will by virtue of which the lien sought to be acquired was allowed.

4. The lien does not set forth the kind and amount of materials furnished.

1. The lien names the East End Mantel & Tile Company, lessee, and James R. Mellon, et al., trustees of the estate of Thomas Mellon, deceased, owners or reputed owners. Notice of having filed a lien was served on James R. Mellon, trustee of the estate of Thomas Mellon, deceased, and on R. E. Ellis, receiver of the

mantel and tile company.   The affidavit of defense alleges that the owners were James R. Mellon, Andrew W. Mellon and Richard B. Mellon, trustees under a deed of trust.

It appears that James R. Mellon, the then owner, by articles of agreement dated February 16, 1898, leased and let the premises against which the lien was filed to Thomas J. Cullen, John M. Brody and Charles Schwan, trading as Cullen, Brody and Company, for a term of sixteen years, and that the interest of said tenants became vested in the East End Mantel & Tile Company. Thereafter by deed dated October 16, 1905, James R. Mellon conveyed the premises to James R. Mellon, Andrew W. Mellon and Richard B. Mellon, trustees.

It is contended that James R. Mellon, et al., trustees of the estate of Thomas Mellon, deceased, are not the owners of the land against which the lien was filed and that the lien has not been filed, nor has notice been served on James R. Mellon, Andrew W. Mellon and Richard B. Mellon, trustees as aforesaid, the real owners.

Section 11 of the act of 1901 provides, inter alia, that the plaintiff shall set forth the name of the owner of the property.   The act of April 17, 1905, amended sec. 11 of the act of 1901 and requires the plaintiff to set forth the name of the party claimant and of the owner or reputed owner of the building.   Prior to the act of 1901 the uniform practice was to file the lien against the owner or reputed owner.   The amendatory act of 1905 would indicate a return to that practice.

In Jones v. Schwan, 4 W. & S. 262, Chief Justice GIBSON said: "But as the claim is against the building instead of the person, and as the name is only a circumstance of description to specify the property and give notice to purchasers, entire accuracy in regard to ownership may not be indispensable."   "But where the claim purports to declare the name of the owner and mistakes it altogether the mistake is fatal."   When a lien is filed against one as trustee without naming the cestui que

trust the lien will not be stricken off where the name of
the owner is not misleading.

In this case the lien purports to give the name of the
cestui que trust, but it is not alleged that James R. Mel-
lon, Andrew W. Mellon and Richard B. Mellon were
prejudiced by the misnomer.  The affidavit of defense
does not set forth for whom the named legal owners hold
the property in trust.  If the naming of the cestui que
trust and of the three trustees be essential such names
may be added by amendment.  Failure to give the
notice required by sec. 21 of the act renders the lien
fatally defective.  That James R. Mellon was one of the
trustees named in the deed of trust is admitted.  Service
upon him, if he was the acting trustee in charge of the
property, might be sufficient.

2. By agreement dated November 30, 1910, James
R. Mellon, Andrew W. Mellon and Richard B. Mellon,
trustees, granted the East End Mantel & Tile Com-
pany permission to enlarge the elevator then in the rear
of the building.  Thereafter the claimant, J. J. Seelar,
doing business as the Seelar Elevator Works, and the
mantel and tile company entered into an agreement
whereby the claimant agreed to construct a passenger
elevator and to enlarge the elevator then in the building.
In pursuance with said agreement the materials were
furnished and work done for which the lien is filed in
this case.

The lien does not set forth, nor does the claimant
in his replication allege that the work was done for the
immediate use and benefit of the lessor.  The replication
alleges "that one of the men employed by him (the
plaintiff) in connection with the work . . . . not being
satisfied as to the responsibility of the East End Mantel
& Tile Company applied to one of the owners of the
property in question, stating his reasons for inquiring
and asking if it would be all right to go ahead with the
work and that said owner responded that it would.

The averment is vague and indefinite.  It is not al-

leged that the mantel and tile company acted as the owner. The company was recognized and the claimant contracted with the company as a lessee. The name of the owner with whom plaintiff's employee conferred is not given, nor does the plaintiff claim that he had knowledge of such statement or that the statement induced the making of the contract or the performance of the work.

Section 2 of the act of 1901 provides:

"Nor shall any claim be valid against the estate of an owner by reason of any consent given by him to his tenant to improve the leased property unless it shall appear in writing signed by such owner that said improvement was in fact made for his immediate use and benefit."

To bind the estate of an owner it must appear that an improvement contracted for by a tenant was made with the consent of the owner and for his immediate use and benefit. It is the duty of a contractor seeking to charge the estate of the owner to inquire as to the consent given by the owner.

In construing the acts of assembly enacted prior to the act of 1901 authorizing liens for alterations with the proviso that there shall be no lien where the alteration has been made by the lessee without the written consent of the owner, it was held that the test of the right to bind the property of the landlord for the work done for the tenant is that the work had been done by the tenant for the landlord with the consent of and ultimately to be paid for by the latter. "The circumstances that the tenant and not the landlord was to defray the expense of the improvement was conclusive that neither the landlord nor the building was to be subject to the cost of the work. The test of the question is, who was to incur the cost of the repairs? If the landlord, the building was subject to the lien, but if the tenant, it was not:" Botler v. Espe, 99 Pa. 313.

In this case the written consent was not a part of

the agreement leasing the property, nor was the covenant of the tenant to make the improvement a condition upon which the property was let. The permission was granted long after the execution and delivery of the lease and was not based on a new consideration.

The tenant desired to enlarge the elevator and agreed to pay the cost and expense of the improvement and stipulated that they would not suffer or permit any mechanics' liens to be filed against the premises. If the work and materials were to be done and furnished upon the credit of the building, it was the duty of the plaintiff to ascertain whether written consent had been obtained from the owner, and the terms upon which the consent was granted.

Had the plaintiff examined the written permission given the tenant it would have appeared that the improvement was to be made at the cost and expense and for the benefit of the tenant. The owners had not certified that the improvement was for their immediate use and benefit. The contention that it was for the immediate use and benefit of the trustees in that it would increase the value of their building and property might be urged to sustain any alteration or improvement—unless temporary in character—made by a tenant. The purpose of the section was to protect an owner against contracts made by a tenant without the owner's written consent or which might be for the exclusive benefit of the tenant.

It has been repeatedly held that a compliance with the statutory requirements is necessary in order to give a mechanic's lien validity. Conceding that the lien need not show on its face that the written consent provided in sec. 2 was given, yet in this case there is no dispute as to the facts. The written permission was expressly conditioned on the tenant's payment of the cost and expense and expressly forbade the filing of a lien. It did not appear in writing that the improvement was made for the immediate use and benefit of the owners.

3. The deed from James R. Mellon to the three trustees is not annexed to, nor does it form a part of, the record in this case. It is averred and not denied that the trustees had authority to make the improvement and thereby charge the estate with the lien for the cost and expense thereof. It was not necessary to set forth in the lien that the work was done and materials furnished under authority contained in the deed.

4. The written proposal submitted by the Seelar Elevator Works to the mantel and tile company specifically sets forth the character of the work to be done and the materials to be furnished. The bill of items specifies two elevators as per contract. There seems to be sufficient in the written proposal, its acceptance and the bill of particulars to put the owner on notice and enable him to protect himself against the claimant and to settle with the tenant.

The owners have not given their consent in writing as required by sec. 2 of the act of 1901 and it not appearing in writing signed by the owners that the improvement was made for their immediate use and benefit or for the immediate use and benefit of the trust estate, the lien is invalid and should be stricken off.

*Error assigned* was the order striking off the lien.

*W. K. Jennings*, with him *D. C. Jennings*, for appellant.—Section 34 of the act of 1901 is unconstitutional: Vulcanite Portland Cement Co. v. Allison, 220 Pa. 382; Philadelphia v. Haddington M. E. Church, 115 Pa. 291; Page v. Carr, 232 Pa. 371; Smith's App., 241 Pa. 336; Ayars' App., 122 Pa. 266.

*Ralph Longenecker*, with him *John G. Buchanan* and *Gordon & Smith*, for appellees.—Section 34 is constitutional: Wyss-Thalman v. Beaver Valley Brewing Co., 216 Pa. 435; Keely v. Jones, 35 Pa. Superior Ct. 642; Felin v. Conway, 32 Pa. Superior Ct. 171; Scott Mfg.

Co. v. Morgan, 217 Pa. 367; Deeds v. Imperial Brick
Co., 219 Pa. 579.

OPINION BY PORTER, J., July 15, 1914:

The plaintiff having issued a writ of scire facias upon
a mechanic's lien, under the provisions of the Act of
June 4, 1901, P. L. 431, as amended by the Act of
April 17, 1905, P. L. 172, and by the Act of June 15,
1911, P. L. 980, an affidavit of defense was filed by
James R. Mellon et al., trustees, etc., the owners of
the property. The said defendants then availed them-
selves of the provisions of sec. 34 of the act of June 4,
1901, by entering a rule requiring the plaintiff to reply,
under oath or affirmation, to the statements set forth
in the affidavit of defense, and after the plaintiff had
filed his replication moved the court for judgment on
the whole record. The court below entered judgment in
favor of the defendants James R. Mellon et al., trustees
of Thomas Mellon, deceased, owners, upon the whole rec-
ord, and from that order the plaintiff appeals.

The opinion filed by the learned judge of the court
below, which will appear in the report of this case,
fully vindicates his conclusion, that upon the undisputed
facts clearly disclosed by the record, the plaintiff was
not entitled to a lien, as against the owners of this
property. Nothing can be profitably added to what
was said by the learned judge of the court below upon
this branch of the case. The facts disclosed by the
affidavit of defense and the replication filed thereto
by the plaintiff, were conclusive against the right of
the plaintiff to maintain his lien against the property
of these owners. The learned counsel for the appellant
contends, however, that the entry of this judgment was
without authority for the reason that sec. 34 of the
Act of June 4, 1901, P. L. 431, is a special law, "pro-
viding or changing methods for the collection of debts
or enforcing of judgments," within the prohibition of
sec. 7 of art. III of the constitution. While many

of the provisions of the act of 1901 have been held to
violate this constitutional restriction, for the reason that
they gave to this special class of creditors, mechanic's
lien claimants, some new right, or some remedy which
enabled them to reach property which had not been
subject to such claims prior to the constitution of 1874,
none of the decisions can reasonably be interpreted to
mean that it is beyond the power of the legislature to
make any change in the details of the procedure relat-
ing to the old method for the collection of such debts.
The result of the decisions is to make it clear that any
provision of the act of 1901 which is clearly divergent
from, and is an advance upon the law as it stood prior
to the constitution of 1874, is to be regarded as invalid:
Page v. Carr, 232 Pa. 371; Sax v. School District, 237
Pa. 68.    Those provisions of the act of 1901 which im-
pose limitations and restrictions upon claimants of this
particular class cannot be held to be an enlargement of
the rights which had been conferred upon them as a
special favor, such restrictions and limitations tend to
place such claimants upon a more equal footing with
other creditors.    Thus it is that a number of the provi-
sions of the act of 1901 giving to those against whose
property such claims were asserted the right to notice
and placing at their disposal the means of having their
properties promptly freed from the cloud of claims im-
properly filed, have been sustained: Keely v. Jones, 35
Pa. Superior Ct. 642; Glauser v. Scofield, 38 Pa. Su-
perior Ct. 632; Cox v. Croft, 39 Pa. Superior Ct. 551.
The act of 1901 changed the form of the writ of scire
facias and of the time within which it might issue, pro-
vided for an affidavit of defense and a replication thereto
by the plaintiff, thus changing the manner in which the
issue was formed, and these changes in mere procedure
were recognized as valid and effective by the Supreme
Court: Wyss-Thalman v. Beaver Valley Brewing Co.,
216 Pa. 435; Deeds v. Imperial Brick Co., 219 Pa. 579.
The act of 1901 repealed all prior legislation, relating

to mechanics' liens, and if this plaintiff is entitled to recover he must do so under the provisions of that statute, for if the lien is not enforceable, it is inoperative; it is no lien: Henry Taylor Lumber Company v. Carnegie Institute, 225 Pa. 490.

Section 32 of the Act of June 4, 1901, P. L. 431, prescribed a new form of scire facias for mechanics' liens, which form has been changed by the subsequent amendments of 1905 and 1911, above mentioned. Section 34 of the statute regulates the procedure after the writ has been served. The provisions in each of these sections are new, and if it is not within the legislative power thus to regulate the details of procedure in old methods for the collection of debts, then both sections must fall. If sec. 34 is invalid, so also is sec. 32, and no scire facias could lawfully issue upon any mechanic's claim. The result would be to render all mechanics' claims unenforceable and inoperative. The constitutionality of these two sections of the statute was considered by this court in the cases of Atlantic Terra Cotta Co. v. Carson, 53 Pa. Superior Ct. 91, and Burrows v. Carson, 53 Pa. Superior Ct. 488. We held in those cases that these provisions of the statute, relating to the mere form of the writ and to the details of procedure, did not offend against the constitutional provision and were a valid exercise of legislative power. The provision in sec. 34, permitting a defendant to move for judgment on the whole record, deprives the claimant of no constitutional right. This provision can only be of advantage to a defendant in those cases in which the plaintiff by his replication discloses that he has no right to a lien; there are no facts in dispute and there is, therefore, nothing upon which a jury ought to be permitted to pass. This provision is the counterpart of the right conferred upon the plaintiff, by the same section, to move for judgment for want of a sufficient affidavit of defense. The Act of June 4, 1901, P. L. 364, which provides a complete and exclusive system

regulating the creation of municipal liens, contains in sec. 19 provisions precisely similar to those in sec. 34 of the statute with which we are now dealing. These statutes passed upon the same day, required precisely the same procedure to enforce the two classes of liens which are not only most numerous in our practice but are more nearly similar in their nature, as they do not directly arise from an express contract between the parties, than any others known to our law. Mr. Justice Stewart, in Scranton v. Genet, 232 Pa. 272, referred to the harmony between these statutes as follows: "The latter act, passed the same day as the municipal claim act, changed the procedure in cases of mechanics' liens, and brings it into exact accord with the procedure provided for in the municipal lien act." The legislative purpose and the effect of the legislative action was not to create diversity of remedies and procedure, but to produce uniformity in the practice as to liens of this character. Further discussion of this question could only result in repetition of what we said in Atlantic Terra Cotta Co. v. Carson, supra. The specification of error is overruled.

The judgment is affirmed.