Murray, Appellant, *v.* Zemon.

Argued October 4, 1960.  Before JONES, C. J., MUS-MANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused February 10, 1961.

*James A. Danahey,* with him *J. I. Simon,* for appellant.

*John B. Nicklas, Jr.,* with him *McCrady and Nicklas,* for appellee.

OPINION BY MR. JUSTICE EAGEN, December 1, 1960:

Appellant-contractor filed a Mechanics' Lien claim against appellee-owners and Leonard Zemon, tenant, for improvements made to the former's premises. Subsequently, the court permitted an amended lien to be filed and later, concluding that this claim was invalid, sustained a motion to strike it off. The legal correctness of this ruling is challenged by this appeal.

The narrow question presented is whether the facts pleaded in support of the lien satisfy the requirements of the Mechanics' Lien Act of June 4, 1901, P. L. 431, §2 (49 PS §24), which provides as follows: "Nor shall any claim be valid, against the estate of an owner, by reason of any consent given by him to his tenant to improve the leased property, unless it shall appear in writing, signed by such owner, that said improvement was in fact made for his immediate use and benefit."

The court below correctly concluded that the writing required by the law was never executed.

For the purpose of this proceeding the facts well pleaded must be assumed to be true. Mere conclusions of fact or law are not in this category. The facts pleaded may be summarized as follows: The premises involved had been utilized for years as a commercial abattoir, a nonconforming use under existing zoning ordinances. Zemon was in possession by virtue of a written lease. There is nothing of record which could support a judicial conclusion that the terms of the lease in any way constituted consent on the part of the owner, given to the lessee-appellees, to make repairs to the building upon the credit of the owners or the building itself. On or about June 18, 1956, the Department of Health of the City of Pittsburgh notified Zemon that the slaughterhouse operations had to cease. As a result, an attorney, representing Zemon, consulted with a representative of the Department of Health and dis-

cussed the making of renovations to the building to satisfy the Department of Health's requirements. Plans were drawn up by an architect. A permit to make the repairs was granted by the Bureau of Building Inspection on September 25, 1956. The work began October 25, 1956. On November 1, 1956, the contractor entered into a written contract with the tenant covering the work, which included replacement and reconstruction of certain portions of the building. The former knew who owned the premises. The owners were not parties to the contract, and its terms clearly disclose that the contractor, as of that time, was relying solely on the credit of the tenant. However, the contract was entered into with the knowledge and oral consent of the owners and they had previously agreed to help obtain the money necessary to pay for the repairs by executing a mortgage on the premises. The tenant, in turn, had agreed with the owners to enter into an extension of the lease for the building as renovated.

On November 3, 1956, at a time when two-thirds of the work had been completed, the Director of Health of the city filed an appeal from the issuance of the building permit. The continuance of the work desisted. This appeal was dismissed on November 26, 1956. The work resumed. On December 5, 1956, the city served on the tenant a closing notice. This was followed by an equity action, on behalf of the city, to restrain. The owners and the tenant, as parties-plaintiff, filed a cross action in equity (complaint sworn to on December 10, 1956) seeking to enjoin the city from closing the operation. Testimony of the husband-owner taken at the hearing in this action showed his knowledge of and agreement to the making of the repairs to the building and an expressed intention on his part to help the tenant arrange payment therefor through the mortgage financing. An amicable understanding re-

sulted so that the repairs to the building, delayed as a result of the court action, resumed and the slaughterhouse operations continued. After the work was completed, the cost was paid for by the tenant in part only. Payment of the balance due was demanded from the owners. The mortgage financing, originally intended by the owners, never occurred.

It is strenuously urged by appellant-contractor's counsel that the bill in equity, referred to above, signed by the owners and the tenant, completely met the requirements of Section 2 of the statute, outlined above, and that, in any event, the owners are now estopped from asserting the defense of a lack of a writing sufficient to comply with the terms of the statute.

We must always bear in mind that this is not a common law action, but rather a claim to assert a peculiar type of lien against real estate under the provisions of a statute, strict compliance with which has always been demanded. Such liens are purely creatures of statutes; they did not exist at common law. Consequently, they are available only on such terms as the Legislature saw fit to provide: *Hoffman Lumber Co. v. Mitchell,* 170 Pa. Superior Ct. 326, 85 A. 2d 664 (1952) ; *Associated Lumber & Mfg. Co. v. Mastroianni,* 173 Pa. Superior Ct. 310, 98 A. 2d 52 (1953). The right to the lien arises not from the act of furnishing the labor and materials, but rather from the debt arising therefrom: *Horn & Brannen Co. v. Steelman,* 215 Pa. 187, 64 Atl. 409 (1906). The right to file a mechanics' lien must have a contract as its basis.

The written contract for the repairs involved herein was entered into between the claiming contractor and the tenant, Zemon. By its express terms, it manifests that the person agreeing to pay the bill was Zemon. No contractual relationship ever existed between the contractor and the owners whereby the lat-

ter agreed to pay the cost of the repairs or any portion thereof. No promise, by the owners, to pay for the repairs is asserted. The fact that the owners had knowledge of and consented to the repairs being made is not in itself sufficient: *Fluke et al. v. Lang et al.,* 283 Pa. 54, 128 Atl. 663 (1925); *Seelar v. East End M. & T. Co.,* 58 Pa. Superior Ct. 119 (1914); 23 P.L.E. MECHANICS' LIENS, §11, and cases cited therein. If the law were otherwise, the cost of almost every alteration made by a tenant could be the subject of a lien against the owner. In order for the claim to be valid against the estate of the owner, where he is not a party to the contract, his consent must appear in the form of a written statement, signed by him, and which shall also state that the improvement is made for his immediate use and benefit. This is a condition precedent. The claim filed must on its face show the existence of such consent to satisfy this requirement. Every mechanic's lien must be self sustaining: *Knelly v. Horwath,* 208 Pa. 487, 57 Atl. 957 (1904).

The complaint in equity, signed by the owners and as outlined above, is not sufficient compliance with this requirement of the statute. This pleading was executed on December 10, 1956, whereas the work involved was begun the previous October 25th and three-fourths completed on November 3rd. Certainly, no convincing argument may be asserted that the contractor did the work relying on the averments in the bill of complaint, executed and filed in the equity action long after the contract was made and work begun. It should be remembered that the averments of this pleading were those of both the owners and the tenant. It is certainly not such a writing as the statute contemplates. The allegation therein, that the suspension of the slaughterhouse operations and the interference with the improvements to the building are a great detriment

to the owners and the tenant and will cause irreparable injury to them, does not constitute a positive statement by the owners that the improvement was made for their "immediate use and benefit." The owners' benefit from the repairs is clearly indirect and secondary. By their completion, the premises would be made to comply with Department of Health requirements and, consequently, the continuance of rents from the tenant would be assured—a real benefit, no doubt, but an indirect rather than an immediate one.

As pointed out in *Boteler v. Espen,* 99 Pa. 313, 315 (1882), the test of the question involved is found in the identity of him who incurred the cost of the repairs: "If the landlord, the building was subject to the lien, but if the tenant, it was not." This case held the written consent required was an absolute consent, consistent with the right to do the work on the credit of the building. While the above case was decided under the provisions of the earlier Mechanics' Lien Act of August 1, 1868, P. L. 1168, we do not believe that the Act of 1901, supra, intended to change the nature of the consent required. If anything, the words in the latter statute are more restrictive. The reasoning in *Boteler,* that the fact that the tenant and not the landlord was to defray the expense of the improvement was conclusive that it was not intended to subject either the owner or the building to a possible future lien, applies with equal force herein. And, as pointed out in *Fluke v. Lang,* supra, the very purpose of certain provisions of the Act of 1901 was to protect the owner against the filing of lien claims involving improvements contracted for by the tenant, where the circumstances clearly show that the contractor looked to the tenant for payment at the time the contract was made.

Nor are we prompted to sustain the validity of the claim because of appellant's argument that the owners

are now estopped to raise the question. The contractor knew who the record owners of the property were. With this knowledge, he contracted in writing with the tenant for payment. No facts were withheld nor any attempt made to mislead. No promise was ever made by the owners to pay for the cost of the improvement. Under such circumstances, estoppel does not lie. As pointed out in *Seelar v. East End M. & T. Co.,* supra, if the contractor desired to subject the estate of the owner to such a lien, it was his duty to inquire into the nature of the consent given, if any. His failure to do so is his fault alone. When consent, of the type required by statute as a prerequisite to such a lien, is lacking, no such lien may successfully be asserted.

Judgment affirmed.