American Seating Company, Appellant, *v.*
Philadelphia.

Argued November 20, 1968. Before JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Richard K. Masterson,* with him *Waters, Fleer, Cooper & Gallager,* for appellant.

*Thomas A. Matthews,* Assistant City Solicitor, with him *Karl I. Schofield,* Deputy City Solicitor, *Matthew W. Bullock, Jr.,* Second Deputy City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE EAGEN, May 9, 1969:

The American Seating Company (hereinafter American) filed a mechanics' lien claim against the landlord interest of the City of Philadelphia in the Spectrum Sports Arena located in Philadelphia. The Common Pleas Court of Philadelphia sustained the City's preliminary objections to the lien claim and entered an order dismissing the lien. From that order, this appeal was taken.

On May 26, 1966, one Jerry Wolman (hereinafter Wolman) and the City of Philadelphia (hereinafter City) entered into a Construction and Lease Agreement which provided that Wolman as the tenant was to construct an arena for ice hockey and other events, Wolman paying the entire cost of construction. The agreement provided that Wolman would remain in possession as tenant for a term of 50 years with an option to renew the lease for an additional term of 50 years. Title to the land on which the arena was to be built and the building itself was to remain with the City.

Wolman entered into an agreement with American under which American undertook to install substantially all of the seating in the arena. After American performed its obligations under the agreement, Wolman and Spectrum Arena, Inc.[1] (hereinafter Spectrum) defaulted under their agreement by failing to pay American $170,756.17, the balance owed to American under the contract. American then filed the mechanics' lien claim in that amount against the lease-

---

[1] Wolman assigned all of his right, title and interest in the lease agreement to Spectrum, and Spectrum assumed all of Wolman's obligations under the lease agreement. Subsequently, Wolman's agreement with American Seating Company was amended several times, including an amendment in which Spectrum became a party to the agreement and also agreed to assume all of Wolman's obligations under his contract with American.

hold interest of Spectrum and/or Wolman and the landlord interest of the City. The validity of the latter claim is the subject of this appeal.

American argues that its lien claim is valid because the materials and labor it supplied were not provided for a "purely public purpose." This argument responds to §303(b) of the Act of August 24, 1963, P. L. 1175, 49 P.S. §1303(b), which provides as follows: "(b) Public Purpose. No lien shall be allowed for labor or materials furnished for a purely public purpose."

According to American, Wolman's (and Spectrum's) right under the agreement with the City to control and exclusively to manage the Spectrum; their right to be selective in scheduling events, to the extent that the public has no choice in the matter; and their involvement in the Spectrum for profit,—all indicate a vital and vibrant private interest in the Spectrum, and preclude any work in the Spectrum's construction from being purely public in purpose.

In support of their claim, American relies upon *Henry Taylor Lumber Company v. Carnegie Institute*, 225 Pa. 486, 74 A. 357 (1909). In that case, the City of Pittsburgh owned land which it set apart for the erection of a technological school. The school was to be constructed by a private board of trustees, which was to hold title to the building, but not to the land upon which it was built. Title to the land was to remain with the City of Pittsburgh pursuant to the authorizing statute. The Board entered into an agreement with a contractor for the construction of the building. Upon the contractor's default in its obligations to a subcontractor, the subcontractor filed a lien claim against the board of trustees and the City of Pittsburgh. The lower court rejected the Board's argument that the subcontractor's work was done for

a purely public purpose" and was therefore exempt from a mechanics' lien claim under the second section of the Act of June 4, 1901, P. L. 431. We accepted the lower court's judgment on that matter, and said in dictum at page 489: "While the Margaret Morrison Carnegie Technical School is, to some extent, a public institution, in that students are educated upon payment of a nominal tuition fee, yet, in our opinion, its purposes cannot be said to be 'purely public'. The funds for its erection and maintenance were contributed by a private citizen, neither the Commonwealth, the City, nor any public agency thereunder furnishing any of the funds necessary therefor, and instead of the school being managed or directed by the public through public officials, it is under the charge of a board of trustees, specially created, with exclusive authority to prescribe the qualifications for admission of pupils, the course and terms of study, and make and enforce such rules and regulations for the management of the school as they may deem proper. Under these circumstances, it seems to us, the public enjoys the benefits of the school, not by right, as it should if the purpose was public, but by permission only."

Thus it appears that §303(b) of the Act of 1963 (supra) does not preclude a viable mechanics' lien here. But even though the Act permits the lien, still we must inquire and decide whether, apart from the Act, the case law of Pennsylvania precludes mechanics' lien claims against municipalities. For as the lower court indicated, "the Act contains no provision allowing or disallowing mechanics' liens against land or buildings owned by municipalities, counties or cities."

The lower court dismissed American's lien because it found that it was the law of Pennsylvania that there can be no liens against municipal property. For that proposition, the lower court relied principally upon

*Sundheim v. Phila. School District*, 311 Pa. 90, 166 A. 365 (1933), where, in dictum, that rule was enunciated.

Although our research has disclosed no case explicitly holding that in every instance liens against municipal properties are void, still the statement seems correct as a general proposition of Pennsylvania law. However, it seems to us that a meaningful ground for distinction rests in the use to which the municipality puts the property. Where, as here, the municipality acts as an absent landlord, entrusting the management and control of its premises to its tenant; and where the building was constructed and paid for by the tenant; and further, where the municipality in owning the building, discharges a function not governmental in nature, but rather proprietary and quasi-private;—then an exception to the general rule that municipal property is exempt from mechanics' liens seems proper. Since an execution upon the lien would not disrupt an essential public service or function, no reason appears for striking the lien down.[2]

The hardship which our modification of the general rule works upon municipalities is illusory. In all cases, the municipality can immunize itself from mechanics' lien liability by simply providing in its contract with the other party that all mechanics' liens are waived. That such a provision would bind all subsequent parties who contributed material and labor to the premises is indicated by the Mechanics' Lien Law of 1963, supra, Article IV, §402, 49 P.S. §1402, which provides: "A written contract between the owner and contractor or a separate written instrument signed by the contractor, which provides that no claim shall be

---

[2] Examples of courts adopting this distinction are *Kerr v. New Orleans*, 126 F. 920 (5th Cir. 1903), *City of Bradenton v. Fusillo*, 134 Fla. 759, 184 So. 234 (1938), and *City of Hazard v. Duff*, 287 Ky. 427, 154 S.W. 2d 28 (1941).

filed by anyone, shall be binding; but the only admissible evidence thereof, as against a subcontractor, shall be proof of actual notice thereof to him before any labor or materials were furnished by him; or proof that such contract or separate written instrument was filed in the office of the prothonotary prior to the commencement of the work upon the ground or within ten (10) days after the execution of the principal contract or not less than ten (10) days prior to the contract with the claimant subcontractor, indexed in the name of the contractor as defendant and the owner as plaintiff, and also in the name of the contractor as plaintiff and the owner as defendant."[3]

The question next arises whether the City, as the owner of the Spectrum, has given to its tenant, Wolman, the kind of consent to improve necessary to subject it to a mechanics' lien claim.

Section 303 of the Act disallows liens in enumerated instances. Section 303(d) provides: "(d) Leasehold Premises. No lien shall be allowed against the estate of an owner in fee by reason of any consent given by such owner to a tenant to improve the leased premises unless it shall appear in writing signed by such owner that the erection, construction, alteration or repair was in fact for the immediate use and benefit of the owner."

In *Murray v. Zemon*, 402 Pa. 354, 167 A. 2d 253, we considered the requirements for a writing contemplated by §2 of the Mechanics' Lien Act of June 4, 1901, P. L. 431, 49 P.S. §24.[4] We said there that in order

---

[3] In this very case, the City incorporated such a waiver of lien stipulation in its contract with Wolman, but then filed the contract in the wrong office, thus preventing constructive notice of the waiver to American.

[4] Section 303(d) of the Mechanics' Lien Act of 1963, supra, is practically identical with §2 of the 1901 Act.

for a mechanics' lien claim to be valid against the estate of the owner, where he is not a party to the contract, his consent must appear in the form of a written statement signed by him, which states that the improvement is made for his immediate use and benefit.

A cursory perusal of the Construction and Lease Agreement made between the City of Philadelphia and Wolman, and *signed by both parties,* indicates that it fulfills to perfection every requirement for a writing under §303(d). We quote from that agreement, in relevant part: "WHEREAS, TENANT desires to lease from CITY upon the terms, conditions and covenants hereinafter set forth, *for the purpose of constructing and operating the* ARENA *thereon . . .;* and WHEREAS, the CITY and its taxpayers *will benefit* from said lease by deriving additional income from said STADIUM SITE, thus defraying the cost thereof, for which the CITY is already obligated . . .; and WHEREAS, the CITY *will also benefit in receiving without expense an arena subject only to this lease and available thereafter for operating or leasing by the* CITY; and WHEREAS, the CITY *will also benefit in that the proposed* ARENA *and the events to be there presented will be important additional assets for Philadelphia in the obtaining of tourist and convention business;".* (Emphasis added.) Paragraph 2(b) of the Agreement provides that "Construction shall be in accordance with plans and specifications (hereinafter called "Plans") to be prepared by Skidmore, Owings, & Merrill or by such other architect as shall be selected and engaged by TENANT subject to the approval of CITY, which approval shall not be unreasonably withheld."

The central purpose of the Construction and Lease Agreement between the City and Wolman was the construction of a sports arena which, by the City's own admission, would redound to its benefit. Neither

§303(d) of the Mechanics' Lien Act nor any decision of this Court has ever required that the writing showing the owners' consent be separate from the lease agreement.[5]

In short, the City has, by its lease with Wolman, executed the kind of writing exactly contemplated by §303(d) of the Mechanics' Lien Act of 1963, and by the pertinent decisions of this Court construing that provision of the Act.

One other issue must be resolved. The Act of April 15, 1834, P. L. 537, §6, 16 P.S. §8802, provides an exclusive method for execution against counties.[6] In *Wilson v. The Commissioners of Huntingdon County*, 7 W. & S. 197 (1844), the court held that a mechanics' lien against the county courthouse would not lie because under the Act of 1834, supra, no execution could issue on that lien against county property. The Act of 1834, as construed in *Wilson*, provided that the exclusive method to enforce a judgment against a county was an action of mandamus against the county treasurer. Since the Act of 1834 prohibited execution against county property, no mechanics' lien could be asserted against the property because there was no method to enforce payment of the claim.

In *Monaghan v. City of Philadelphia*, 28 Pa. 207 (1857), this Court said that the City of Philadelphia was "clearly within the spirit of the act [of 1834]". Reading *Wilson* and *Monaghan* together, the lower court concluded that American's lien here was barred.

---

[5] In *Amos v. Clare*, 9 Phila. 35 (1872), the court, in construing a provision of the Act of 1868 (P. L. 1168) very much like §303(d) of the present Act, explicitly held that the consent of the owner need not be shown by a writing separate from the lease.

[6] This Act was repealed except as to counties of the first class by the Act of May 2, 1929, P. L. 1278, Art. XIII, §1051, 16 P.S. 2901 (Historical Note).

In our view, the broad statement of the *Wilson* case that there can be no lien if there can be no execution is incorrect and undesirable. Such reasoning ignores the inchoate security and priority effect of a mechanics' lien while the property remains titled in the owner. Furthermore, *Wilson* overextends the import of the Act of 1834, which was designed to effectuate the orderly collection of a judgment against a municipality, without the disruption of municipal functions, and was not designed to insulate municipalities from the mere security and priority effect of a mechanics' lien.[7]

We find persuasive the approach of the Supreme Court of Kansas which considered this problem in *Wilson v. School District*, 17 Kans. 104 (1876). In sustaining a lien against a school district, the Kansas court held that the lien-claimant's inability to execute against the municipality did not invalidate his lien. The Court stated at pages 110-111 of its opinion: "Liens may be foreclosed and placed in judgment, and then like other judgments are met by this statute which provides a tax instead of an execution as a means of enforcement. But it may be said that there is an incongruity in calling that right a specific lien, which is incapable of direct enforcement; and further, that the necessities of public business require that public buildings shall be held exempt from mechanics' liens, or any risk, incident thereto, of their being lost to the public use. But many specific liens exist which cannot at all times be directly or otherwise enforced. A mortgage prior to its maturity, and a decree of foreclosure prior to the time when by its terms process may issue, are examples. So there are liens whose en-

---

[7] *Wilson* prevented a lien upon a county courthouse; our disposition likewise precludes liens against such municipal properties as are used for essential governmental functions; the result in *Wilson* is, therefore, quite compatible with our result here.

forcement is suspended during the existence of the title by which defendants hold their property . . . . So here, there is nothing to prevent the existence of a lien upon a school building, suspended or incapable of direct enforcement until the public use of the building ceases, or the title passes from the district."

We have reviewed the other arguments of the City in support of the lower court's disposition, and find them unconvincing.

Order reversed, and the lien reinstated.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

———

DISSENTING OPINION BY MR. JUSTICE COHEN:

I cannot understand why the majority has stepped beyond precedent, the statute governing mechanics' liens, and common sense to reach the decision rendered here today.

Section 303 of the "Mechanics' Lien Law" of 1963, P. L. 1175, 49 P.S. §1101, provides: "Section 303. Lien Not Allowed in Certain Cases.— . . . (b) Public Purpose. No Lien shall be allowed for labor or materials furnished for a purely public purpose. . . . (d) Leasehold Premises. No lien shall be allowed against the estate of an owner in fee by reason of any consent given by such owner to a tenant to improve the leased premises unless it shall appear in writing signed by such owner that the erection, construction, alteration or repair was in fact for the immediate use and benefit of the owner. . . ."

The majority now holds that the erection of the Spectrum was not a public purpose and that §303(d) of the Mechanics' Lien Law does not apply. The most shocking result of the majority's opinion is its complete disregard of §303(d).

It was the express purpose of the framers of the Mechanics' Lien Law to protect the owner against the filing of mechanic's lien claims against his property, where the circumstances clearly show that the contractor looked to the tenant for payment at the time the contract was made. Section 303(d) of the Act makes it mandatory for the contractor, who seeks to lien an owner's property, when the contractor has contracted with the tenant alone, to produce a writing whereby the owner specifically admits that the work is being done for the owner's immediate use and benefit, as opposed to work that is done for the benefit of the tenant who contracts for the work and to whom the contractor looks for payment.

The right to a mechanic's lien is provided by statute. Thus, strict compliance is necessary and the statute should not be construed so that the lien is expanded beyond the legislative grant. *Murray v. Zemon*, 402 Pa. 354, 167 A. 2d 253 (1960). This Court should not therefore construe a lease, which permits the tenant to undertake construction on the demised premises, to satisfy a statutory requirement that before a property may be subjected to a mechanic's lien the owner must acknowledge an immediate use and benefit to himself, or consent to be bound for construction costs.

Mr. Justice EAGEN, speaking for a unanimous court, in *Murray v. Zemon*, supra, at 359, clearly stated the requirements: ". . . In order for the claim to be valid against the estate of the owner, where he is not a party to the contract, his consent must appear in the form of a written statement, signed by him, and which shall also state that the improvement is made for his immediate use and benefit. This is a condition precedent. The claim filed must on its face show the existence of such consent to satisfy this requirement. Every mechanic's lien must be self sustaining: . . ."

Even though an owner gives his written permission to the tenant to make alterations, repairs, and additions to the owner's premises, such written permission is not sufficient to authorize the contractor, who deals with the tenant as such, to lien the premises. It is proper for a tenant to obtain the permission of the owner to make repairs, alterations and additions, to the owner's property, but there is no duty upon an owner where the tenant is having the work done by the contractor, to repudiate liability by notifying the contractor.

The majority relies on the preamble of the lease between the City and Wolman to show an "immediate use and benefit" as well as the necessary consent required by subsection (d). This reliance is misplaced for several reasons.

These clauses are nothing more than a justification to the citizens of Philadelphia that the lease will benefit the City. It was an attempt to avoid a repeat of the challenge of misuse of public property that occurred in *Clarey v. Philadelphia*, 311 Pa. 11, 166 Atl. 237 (1933). Nowhere does the City assume the responsibility for the costs of the Spectrum. This is not the consent contemplated under the Act.

Even if we accept the statements in the preamble as fact and determine that there is a "benefit", where is the "immediate use"? There is always some benefit to the owner when his tenant makes improvements upon his land. "Immediate use" requires more than a long-range direct or a present indirect benefit. The owner must have the immediate use of the benefit; for example, when the construction is performed at the end of the leased term or when the owner retains part of the premises and shares the use of the common hallways, walkways, and roof. Unless this use is present, a consent which does not assume financial responsi-

bility will not subject the owner to a mechanic's lien. A recitation that there will be benefits to the public accruing from the construction of an arena is not a consent by the City to be financially bound.

Furthermore, a concession by the majority that there are benefits accruing to the City as stated in the preamble completely undercuts its position that the construction was not for a public purpose under §303(b). The clause which recites the increase in tourist and convention business makes this eminently clear. Any contention that the presence of profits to private enterprise eliminates the public purpose has been disposed of in *Martin v. Philadelphia*, 420 Pa. 14, 215 A. 2d 894 (1966). In that case, Chief Justice BELL ruled that the stadium across the street from the Spectrum was being built for a public purpose. There is no valid distinction for treating the two differently and the *Martin* case should bind this Court.

The holding of the majority clearly violates the law as pronounced in *Martin v. Philadelphia*, supra; *Brann & Stuart Company v. Consolidated Sun Ray, Inc.*, 412 Pa. 288, 194 A. 2d 221 (1963); *Murray v. Zemon*, supra.

I dissent.