DEPARTMENT OF COMMUNITY AF-
FAIRS AND ECONOMIC DEVELOP-
MENT of the State of Delaware, De-
fendant Below, Appellant,

v.

M. DAVIS & SONS, INC., a Delaware
Corporation, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted Oct. 31, 1979.

Decided Feb. 12, 1980.

Peter J. Nolan, Dover, and Marvin Forman, Deputy Atty. Gen., Wilmington, for defendant below, appellant.

John Edward Lindros of David Nicol Williams, Wilmington, for plaintiff below, appellee.

Before DUFFY, McNEILLY and QUILLEN, JJ.

McNEILLY, Justice:

This is an appeal from the Superior Court's grant of summary judgment in favor of the plaintiff in its action to assert a mechanic's lien against a fee interest of the State of Delaware in certain real property owned of record by the Department of Community Affairs and Economic Development.

I

The Department, in an effort to alleviate conditions of cyclical employment,* entered into an arrangement with Omega Chemical Corporation, whereby the Department agreed to finance construction of Omega's chemical manufacturing facilities. The agreement entered into between the Department and Omega is generally referred to as the sale-leaseback method of financing, and it provided that Omega would sell to the Department certain real property upon which the Department would construct the chemical manufacturing facilities, and in turn the Department would lease back the property to Omega. On October 1, 1973, Omega executed a deed passing title of the property to the Department, and on that same date, the parties executed a lease agreement which provided that the Department would complete the project and that Omega would lease the property from the Department at a specified rental for a term of twenty years, at the end of which term Omega would be permitted to repurchase the property at nominal cost.

The Department raised the money for the project from the sale of industrial development revenue bonds pursuant to 6 *Del.C.* Ch. 70, and Omega's rental payments under the lease were in a sum equal to the amount payable as principal and interest on the bonds. The Department in turn, through an indenture of trust with the Farmers Bank of the State of Delaware, pledged its interest in the project as security for the bondholders in exchange for the Bank's administration of the bond funds and collection of the rental payments due under the lease.

On February 8, 1975, fire destroyed the Omega project which was insured against the loss. Omega subsequently used the fire insurance proceeds to begin reconstruction of its facilities, and in so doing, Omega contracted with the plaintiff for labor and material used in the reconstruction. There-

---

* Cyclical employment means employment involving frequent cessations of work and tempo-

rary discharge or layoff of employees . . . .. 6 *Del.C.* § 7001(5)

after, Omega filed for bankruptcy and defaulted on its obligations to the plaintiff and to the Department.

The Department exercised its fee interest in the property by reclaiming it, completing reconstruction of the facilities, and subsequently leasing the project to another chemical company.

On January 12, 1976, plaintiff filed a combined *in personam* and mechanic's lien action against Omega, the Department, and the Farmers Bank, in its capacity as indenture trustee, seeking payment for $29,-432.19 worth of sheet metal duct and fabrication work in connection with reconstruction of the project.

Plaintiff and the Department filed cross motions for summary judgment. In granting summary judgment in favor of the plaintiff as to its claim for a mechanic's lien, and in correspondingly denying the Department's motion, the Superior Court held:

(1) That the doctrine of sovereign immunity was unavailable to the Department in this case to bar plaintiff's action; and

(2) That the lease agreement constituted prior written consent of the Department to the work in question, permitting attachment of the lien;

Because of the foregoing disposition, the Court did not address plaintiff's *in personam* claim against the Department.

The Department appeals from the Superior Court's order, contending that: (1) Plaintiff's action for a mechanic's lien is barred by the doctrine of sovereign immunity and that the State has not waived such defense; (2) A mechanic's lien cannot attach to the State's property which is being used to carry out the public purpose of 6 *Del.C.* Ch. 70; and (3) The lease between the Department and Omega did not constitute "prior written consent" within the meaning of 25 *Del.C.* § 2722.

## II

■ Sovereign immunity places a general bar on nonconsensual suits against the state. *Donovan v. Delaware Water and Air Resources Comm'n*, Del.Supr., 358 A.2d 717 (1976); *Shellhorn & Hill, Inc. v. State*, Del. Supr., 187 A.2d 71 (1962). Sovereign immunity applies to state agencies. *Varity Builders, Inc. v. Polikoff*, Del.Supr., 305 A.2d 618 (1973); *Wilmington Housing Authority v. Williamson*, Del.Supr., 228 A.2d 782 (1967). However, this immunity is not absolute. See e. g., *City of Wilmington v. Spencer*, Del.Supr., 391 A.2d 199 (1978); *Pajewski v. Perry*, Del.Supr., 363 A.2d 429 (1976). We also find the general rule in most jurisdictions to be that absent specific statutory provisions to the contrary, a mechanic's lien will not attach to state owned property used for the benefit the public. *Druml Co., Inc. v. City of New Berlin*, Wis. Supr., 78 Wis.2d 305, 254 N.W.2d 265 (1977); *Repp and Mundt, Inc. v. Hitzelberger Supply Co.*, Ind.App., 353 N.E.2d 547 (1976); *Union Reddi-Mix Co. v. Specialty Concrete Contractor*, Mo.App., 476 S.W.2d 160 (1972); 3 Powell, *The Law of Real Property* ¶ 486[1] (1979). Some authorities have found the basis for the rule not in sovereign immunity, but in the public interest which precludes the satisfaction of private debts out of public property. See *Repp and Mundt, Inc., supra; Union Reddi-Mix Co., supra; Powell, supra.* The public interest served by the rule is in preventing the disruption of essential public services or functions. *American Seating Co. v. City of Philadelphia*, Pa.Supr., 434 Pa. 370, 256 A.2d 599 (1969); see *Mayor and Council of Wilmington v. Recony Sales & Engineering Corp.*, Del.Supr., 185 A.2d 68 (1962). We think both rationale provide a sound basis for the rule.

■ In our present Mechanics' Liens Statute, 25 *Del.C.* Ch. 27, the only provision which affirmatively designates those parties who may be bound by such a lien is 25 *Del.C.* § 2704 which provides, "liens may be filed for or against corporations or individuals." The State and state agencies generally are regarded as not included within statutes using such words as "corporations or individuals", except where a contrary intent is manifest. *Harden v. Mass Transit Administration*, Md.Spec.App., 27 Md.App. 590,

342 A.2d 310 (1975), *aff'd*, Md.App., 277 Md. 399, 354 A.2d 817 (1976); *Cocco v. Maryland Commission on Medical Discipline*, Md.App., 39 Md.App. 170, 384 A.2d 766 (1978). We find no other provisions of the Mechanics' Liens Statute which reveal the clear intent necessary to bring the state and state owned property within the ambit of 25 *Del.C.* Ch. 27.

■■ The Mechanics' Liens Statute being in derogation of the common law, it must be strictly construed, especially as to the obtaining and existence of a lien. *Iannotti v. Kalmbacher*, Del.Super., 156 A. 366 (1931). This rule of construction is particularly pertinent where, as in the instant case, plaintiff seeks to establish an incumbrance on state owned property for a debt incurred by the State's lessee. See *Rubino v. Tranor*, N.J.Cir., 8 N.J.Misc. 815, 152 A. 647 (1930). Moreover, where a party seeks to hold the State or a state agency liable under a statute, any reasonable doubts as to the proper construction of the statute should be resolved in favor of the State. See *Rogan v. Baltimore & Ohio Ry. Co.*, Md.App., 188 Md. 44, 52 A.2d 261 (1947); *Sarges v. State*, Conn.Super., 26 Conn.Sup. 24, 209 A.2d 886 (1965); 3 Sands, *Sutherland Statutory Construction* § 64.01, P.106 (4th ed. 1974).

■ With these principles in mind, we must conclude that, in failing to manifest a clear intent that mechanics' liens attach to state owned property, absent any statutory or contractual authority apart from 25 *Del.C.* Ch. 27 to the contrary, a mechanic's lien will not attach to state owned property used for the benefit of the public.

### III

■ At this point we turn our analysis to 6 *Del.C.* Ch. 70, entitled Economic Development and Environmental Facilities, to see if any language in that statute would constitute a waiver under the present circumstances of the general prohibition against the attachment of mechanics' liens against state owned property.

6 *Del.C.* § 7001 contains certain legislative findings and declarations of policy including, among other things, the public interest in alleviating conditions of cyclical employment. It is clear that financing arrangements, such as the sale-leaseback agreement in the present case, were within the contemplation of the General Assembly when it enacted 6 *Del.C.* Ch. 70.

"Cyclical employment may be eliminated, under certain circumstances, by the modernization of a particular facility. Such modernization may be impossible within the capital resources of the establishment. Under such circumstances, participation by the Department of Community Affairs and Economic Development in refinancing or modernization of facilities will strengthen the position of the establishment in its industry, and eliminate cyclical employment, as hereinbefore defined. It is determined and declared that the elimination of cyclical employment is a public purpose, and that participation by the Department of Community Affairs and Economic Development in refinancing or modernization of facilities, under the criteria hereinafter set forth, will alleviate cyclical employment and thereby promote the public health, welfare, and order.

Therefore, it is declared to be the policy of this State to promote the health, welfare and the good order of the inhabitants thereof by authorizing the Department of Community Affairs and Economic Development, acting as a public agency of the State, to be vested with authority to implement the purposes of this chapter. For such purposes, the public money may be spent and the credit of the State pledged;" 6 *Del.C.* § 7001(8).

6 *Del.C.* § 7003(a) authorizes the Department to issue the bonds necessary for financing such projects in furtherance of the policies specified in 6 *Del.C.* § 7001. And 6 *Del.C.* § 7003(c) grants various powers to the Department in order to effect such financing arrangements, including the powers:

"(3) . . . [T]o sell, lease as lessor, transfer, and dispose of any property or

interest therein at any time required by it;

(4) To acquire by purchase, lease or otherwise, and to construct, improve, maintain, repair, lease, convey, with or without consideration, and operate projects; . . .

(7) To secure the payment of its bonds, notes and refunding bonds or any part thereof by pledge, or deed of trust of all, or any of its revenues and receipts, and to make such agreements with the purchasers or holders of its bonds, notes, and refunding bonds or with others in connection with any such bonds, notes and refunding bonds whether issued or to be issued, including the pledging of the full faith and credit of the State, as the Department deems advisable, subject to the limitations of this chapter and in general to provide for the security of its bonds, notes and refunding bonds, . . . and the rights of the holders thereof;

. . .

(8) To make contracts of every name and nature, and to execute all instruments necessary or convenient for the carrying on of its business; . . . .''

But the provision which we find dispositive of the issue of waiver is 6 *Del.C.* § 7003(c)(1) which provides:

"The Department may exercise all powers necessary or convenient for the carrying out of the aforesaid purposes including, but without limiting the generality of the foregoing, the rights and powers described below:

(1) To sue and be sued, implead and be impleaded, complain and defend in all courts; . . . .''

Insofar as the Department is acting as the seller, lessor, buyer, lessee, constructor, maintainer, and financier of property, we think the inclusion of § 7003(c)(1) reveals an apparent intent on the part of the General Assembly that the Department waive its immunity to suit, without exception to mechanics' lien actions. We see no reason to require an express assumption of liability for mechanics' liens or to give the term "sue or be sued" any meaning other than the usual and ordinary one it conveys, which is that the Department may sue or be sued, without restriction as to the kind of liability sought to be imposed. Cf. *Jones v. State Highway Commission*, Mo.Supr., 557 S.W.2d 225 (1977). Had the General Assembly intended to restrict the kinds of liability to which the Department would be subject, it could have expressly stated those restrictions. Consequently, we hold that the "sue or be sued" clause of § 7003(c)(1) permits an action *in rem*, such as the attachment and enforcement of a mechanics' lien, against property held in fee by the Department. See generally *Strickland v. Wellons*, Ga. App., 116 Ga.App. 252, 157 S.E.2d 76 (1967).

These provisions of the Lease make the facts of this case analogous to the facts which existed in the case of *George & Lynch, Inc. v. State*, Del.Supr., 197 A.2d 734 (1964). In that case, the Plaintiff George & Lynch, Inc., sought to assert damages for breach of contract against the State of Delaware. The sole issue presented to the Supreme Court was whether plaintiff's claim was barred by the Doctrine of Sovereign Immunity. This Court rejected the defendant State's attempt to assert the defense of Sovereign Immunity, and held that a statutory authority for an agency to enter into a contract constituted an effective waiver of the defense of Sovereign Immunity. The Court stated its reasoning as follows:

"By 17 Del.C. § 132(b)(9), the State Highway Department is authorized to 'make and enter into any or all contracts, agreements or stipulations.' It must be assumed that the General Assembly, in granting to the State Highway Department the power to contract, intended that it should have power to enter into only valid contracts. A valid contract is one which has mutuality of obligation and remedy between the parties to it. *It follows, therefore, that in authorizing the State Highway Department to enter into valid contracts the General Assembly has necessarily waived the State's immunity to suit for breach by the State of that contract.*" (emphasis added) (Citations omitted)

\*  \*  \*  \*  \*  \*

"Thus it is that 17 Del.C. § 132(b)(9) is a waiver by the General Assembly of the defense of sovereign immunity in suits brought upon contracts entered into by the State Highway Department . .."

\* \* \* \* \* \*

"It follows, therefore, that a party contracting with an agency of the State authorized by law to enter into contracts has all the remedies under that contract which any private citizen has against another private citizen, including the right to sue for the breach thereof . . ." 197 A.2d at 736–737.

Moreover, we see no conflict between our holding and the public policy underlying the general prohibition against attachment of mechanics' liens against state owned property. Financing arrangements pursuant to 6 *Del.C.* Ch. 70, as in the instant case, serve the admittedly public purpose of alleviating cyclical employment. *Opinion of Justices*, Del.Supr., 177 A.2d 205 (1962). But the attachment of a mechanics' lien against property which the State has leased to a private corporation doing business for profit and which is held by the State in fee as security for the corporation's debt under the provisions of 6 *Del.C.* Ch. 70, will not disrupt any essential public services or functions provided by the government, such as public waterworks or public schools, see *American Seating Co. v. City of Philadelphia*, supra, and *Mayor and Council of Wilmington v. Recony Sales & Engineering Corp.*, supra. Under the present circumstances, mere ownership by the Department of the property is an insufficient reason to distinguish it from "corporations or individuals" for purposes of applying 25 *Del.C.* Ch. 27.

### IV

Having determined that the property in question is subject to the provisions of the Mechanics' Lien Statute, 25 *Del.C.* Ch. 27, we now consider whether the lease between the Department and Omega constituted "prior written consent" within the meaning of 25 *Del.C.* § 2722, which provides:

"Nothing contained in this subchapter shall be construed to render property liable to liens under this chapter for repairs, alterations or additions, when such property has been altered, added to or repaired by or at the insistence of any lessee or tenant without the prior written consent of the owner or his duly authorized agent."

■ The Trial Court in the instant case properly construed the term "prior written consent" as requiring a landowner's written consent to the tenant's erection of the improvement, not as requiring his express consent to be bound by the lien. See *Silverside Home Mart, Inc. v. Hall*, Del.Super., 345 A.2d 427, 429 (1975); 53 Am.Jur.2d *Mechanic's Liens* § 133 (1970).

". . . [T]he obvious basis for the consent requirement is that the owner should not be held liable for erections or repairs that he did not authorize. That authorization has most assuredly been given when the owner requires the construction which gives rise to the lien." *In re Fleetwood Motel Corp.*, 3 Cir., 335 F.2d 863, 866 (1964).

■ The Trial Court found the Department's "prior written consent" in section 6.1(b) of the lease agreement between the Department and Omega, which specified that:

"The Lessee shall have the privilege of making such alterations of or additions to the Project or any part thereof (including constructing any new building, structure or improvement or installing any fixtures, machinery, equipment or other facilities) from time to time as it in its discretion may determine to be desirable for its uses and purposes. The costs thereof shall be paid for by the Lessee and the same shall become the property of the Department and constitute a part of the Project, subject, however, to the provisions of this Section 6.1 and the Lessee shall deliver appropriate documents, as may be necessary to convey title of such property to the Department . . .."

The Department contends that section 6.1(b) of the lease was inapplicable to Omega's reconstruction of the project following the fire. The Department asserts that the applicable provision was section 7.1, relating to damage or destruction of the project by fire, and that section 7.1 "placed the burden exclusively upon the shoulders of Omega" by excluding the Department "from any participation in the decisions to repair or not, or in the making of disbursements for any such repairs from the fire proceeds."

Section 7.1 of the lease provides in pertinent part:

"*Damage and Destruction* . . . . Unless the Lessee shall have been obligated to acquire legal title to the Project pursuant to the provisions of Section 11.-2(a) hereof, if prior to full payment of the bonds or coupons appertaining thereto . . . the Project is destroyed . . or damaged by fire or other casualty to such extent that the claim for loss resulting from such destruction or damage is in excess of $25,000.00, the Lessee shall promptly give written notice thereof to the Trustee. All net proceeds of the insurance resulting from claims for such loss in excess of $25,000.00 shall be paid to and held invested by the Trustee in trust for the benefit of the bondholders, whereupon (I) the Lessee will proceed to repair, rebuild or restore the property . . . as may be desired by the Lessee . . . .

. . . In the event said proceeds are not sufficient to pay in full the costs of such repair, rebuilding or restoration, the Lessee will nonetheless complete the work thereof, will pay that portion of the costs thereof in excess of the amount of said net proceeds . . . ."

And related section 11.2 provides:

"*Obligation to purchase Project prior to payment of the bonds.* The Lessee shall be obligated to purchase the Project prior to the full payment of the bonds (or provision of payment thereof having been made in accordance with the provisions in the indenture), if any of the following events shall have occurred:

(a) The Project shall have been damaged or destroyed as set forth in Section 7.1 hereof to such extent that in the judgment of the Lessee (I) it cannot be reasonably restored within a period of six (6) months to the condition thereof immediately preceding such damage or destruction, or (II) the Lessee is thereby prevented from carrying on its normal operation of the Project for a period of six (6) months or (III) the cost of restoration thereof would exceed by more than $25,000.00 the net proceeds of insurance carried thereon pursuant to the requirements of Section 6.3 hereof, plus the amounts for which the Lessee is self-insured with the respect to deductible amounts permitted under Section 6.3 hereof."

We agree with the Department as to the applicable provision of the lease, but we disagree with the conclusion that by placing full responsibility for reconstruction upon Omega, section 7.1 absolved the Department and its property from all liability for debts which Omega might have incurred during reconstruction. To the contrary, section 7.1 required Omega to reconstruct the project if, in Omega's judgment, it could meet certain conditions prescribed in section 11.2. This is a clear authorization by the Department for Omega to rebuild. That authorization constitutes the written consent that Omega could contract for such work to be done.

V

In conclusion, we hold that the lease between the Department and Omega constituted "prior written consent" within the meaning of 25 *Del.C.* § 2722, which by virtue of the waiver of immunity in 6 *Del.C.* § 7003(c)(1), permits the attachment of plaintiff's asserted mechanics' lien against the fee interest of the State in property owned of record by the Department.

AFFIRMED.