# Henry Taylor Lumber Company *v.* Carnegie Institute, Appellant.

*Mechanic's lien—Public property—Lien against building—Act of April* 23, 1903, *P. L.* 266.

1. Land set apart by a city of the second class under the Act of April 23, 1903, P. L. 266, for the erection thereon of a building for educational purposes by the trustees of a private charitable trust, cannot be bound by a mechanic's lien for labor or material furnished to the building erected thereon.

*Constitutional law—Special legislation—Change of methods for collection of debts or enforcing judgment—Mechanic's lien—Lien against building and loan—Act of June* 4, 1901, *sec.* 38, *P. L.* 431.

2. Section 38 of the Act of June 4, 1901, P. L. 431, which permits mechanics' liens to be filed against a building without reference to the land, and provides for the sale and removal of the building for the benefit of lien holders is unconstitutional inasmuch as it violates sec. 7 of art. III of the constitution, which prohibits any special legislation "providing or changing methods for the collection of debts or the enforcing of judgments."

Argued Nov. 3, 1908. Appeal, No. 204, Oct. T., 1908, by defendants, from order of C. P. No. 2, Allegheny Co., Jan. T., 1908, No. 627, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Henry Taylor Lumber Company v. Board of Trustees of Carnegie Institute. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Scire facias sur mechanic's lien. Before FRAZER, P. J.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was order making absolute rule for judgment for want of a sufficient affidavit of defense.

*Thomas Patterson*, of *Patterson, Sterrett & Acheson*, for Edwin Gilbert & Company, now in the hands of Joel W. Hutton, receiver, appellants.—It would seem to need no argument

that the public lands of the city held for park purposes, wharf purposes, or any other general public purpose such as these, cannot be appropriated to any private purpose: Illinois Central R. R. Co. v. Illinois, 146 U. S. 387 (13 Sup. Ct. Repr. 110); Reighard v. Flinn, 189 Pa. 355.

The Carnegie Technical Schools are a public purpose: Patterson & Co. v. Penna. Reform School, 92 Pa. 229.

*Reed, Smith, Shaw & Beal*, for board of trustees of Carnegie Institute, appellants.

*A. M. Thompson, Lee C. Beatty* and *W. B. Rodgers*, for city of Pittsburg, appellant, cited: Sharpless v. Philadelphia, 21 Pa. 147; Murray v. Allegheny, 136 Fed. Repr. 57.

*Samuel J. Graham* and *George H. Rankin*, for appellee.— The board of trustees of Carnegie Institute acting as the board of trustees of the Carnegie Technical Schools is not such a "purely public agency" under the commonwealth as is meant by the provisions of the act of 1901: McLeod v. Normal School Assn., 152 Pa. 575; State Board of Education v. Greenebaum & Sons, 39 Ill. 609.

The said building is subject to a mechanic's lien under the provision of the Act of assembly of June 4, 1901, P. L. 431, as amended by the Act of April 23, 1903, P. L. 266, and the Act of April 17, 1905, P. L. 172, whether or not the land whereon it was built is owned by the board of trustees, as aforesaid.

The board of trustees of the Carnegie Institute and the trustees of the Carnegie Technical Schools have such ownership in and title to the land described in plaintiff's lien as to make the building erected by them on said land subject to a mechanic's lien under the act of 1901 and the amendments of 1903 and 1905: Allegheny v. Ohio & Penna. R. R. Co., 26 Pa. 355; Slegel v. Lauer, 148 Pa. 236; Farnsworth v. Perry, 83 Me. 447 (22 Atl. Repr. 373); Moulton v. Trafton, 64 Me. 218.

The city of Pittsburg had power and authority under the

Act of assembly of April 23, 1903, P. L. 266, to grant and convey to the board of trustees of the Carnegie Institute a base or qualified fee in the land upon which the Margaret Morrison Carnegie Technical School for Women was built: Com. v. Moir, 199 Pa. 534.

OPINION BY MR. JUSTICE BROWN, October 11, 1909:

By the Act of April 23, 1903, P. L. 266, a city of the second class thereafter acquiring, by purchase, donation, condemnation or otherwise, any real estate for public park purposes is authorized and empowered to set aside such part or parts of said real estate, as it may elect, for a building site or sites for technological schools and institutions for the promotion of arts and sciences and to permit the use of such site or sites for the purpose of establishing and maintaining thereon such schools and institutions. The city of Pittsburg, by virtue of the authority given it by this act, enacted an ordinance on September 14, 1903, authorizing the board of trustees of Carnegie Institute, and their successors, to enter upon, use, occupy and hold certain real estate for the purpose of establishing and maintaining thereon a technological school or schools, and the said board and their successors were authorized to erect thereon such building or buildings as from time to time they should find desirable or necessary for the purposes of said school or schools. The land having been accepted by the board of trustees for the purposes stated, they entered into a contract with Edwin Gilbert & Company, a corporation, for the erection of the Margaret Morrison Carnegie Technical School Building. The Henry Taylor Lumber Company, the appellee, furnished lumber and mill work to the contracting company, which failed, and a receiver was appointed to take charge of its affairs. At the time of the failure it was largely indebted to the appellee for lumber and work furnished in the erection of the building, and to secure the payment of the same the lien which is the subject of this controversy was filed, the board of trustees of the Carnegie Institute and the city of Pittsburg being named as owners, or reputed owners, of the building, and Edwin Gilbert & Com-

pany, in the hands of Joel W. Hutton, receiver, contractor. The lien is filed not only against the building, but upon the ground covered by it and so much more immediately adjacent thereto as may be necessary for its ordinary and useful purposes. The record title to the land is in the city of Pittsburg. The affidavits of defense filed by the board of trustees of the Carnegie Institute and the receiver of the contractor, deemed insufficient by the court below, averred that the said board was not the owner or reputed owner of the property against which the lien was filed, and that, as the title to the real estate and the building against which the lien was filed was in the city of Pittsburg, and the premises were held and used for a purely public purpose, they were exempt from a mechanic's lien under the second section of the Act of June 4, 1901, P. L. 431. The court below, in entering judgment for want of sufficient affidavits of defense, passed upon the single question of the alleged purely public purpose of the building, and, in deciding that it was not of such a character and, therefore, subject to a mechanic's lien, followed McLeod v. Central Normal School Association, 152 Pa. 575. If this were all that was in the case, the judgment would not be disturbed, for the building is not to be regarded as one for purely public purposes as very clearly appears from the following extract from the opinion of the court: "If the purpose of the building is purely public, this rule must be discharged. If not, then it must be made absolute for the amount of the claim less the amount of the set-off claimed. It seems to us the legislative intention was to limit the clause quoted above to buildings erected by public funds for the use of the public. While the Margaret Morrison Carnegie Technical School is, to some extent, a public institution, in that students are educated upon payment of a nominal tuition fee, yet, in our opinion, its purposes cannot be said to be 'purely public.' The funds for its erection and maintenance were contributed by a private citizen, neither the commonwealth, the city, nor any public agency thereunder furnishing any of the funds necessary therefor, and instead of the school being managed or directed by the public through

public officials, it is under the charge of a board of trustees, specially created, with exclusive authority to prescribe the qualification for admission of pupils, the course and terms of study, and make and enforce such rules and regulations for the management of the school as they may deem proper. Under these circumstances, it seems to us, the public enjoys the benefits of the school, not by right, as it should if the purpose was public, but by permission only. The meaning of the words 'for public use' has frequently been passed upon by our courts, and it has invariably been held that these words do not include every use from which a benefit may incidentally be derived by the public. In Market Company v. Railroad Company, 142 Pa. 580, the court said: 'The test whether a use is public or not, is whether a public trust is imposed upon the property, whether the public has a legal right, which cannot be gainsaid, or denied, or withdrawn, at the pleasure of the owner. A particular enterprise, palpably for private advantage, will not become a public use because of the theoretical right of the public to use it. The question is, whether the public have a right to the use. The general public must have a general and fixed use of the property, a use independent of the will of the private person or corporation in which the title is vested, a public use which cannot be defeated by the private owner, but which is guarded and controlled by the law.' "

The city of Pittsburg conveyed no title to the board of trustees of Carnegie Institute to the land on which the school building was erected. The act of April 23, 1903, did not authorize it to do so, and what it undertook to do by the ordinance was simply to exercise the power conferred upon it by that act. That was all it could do. Its power was limited to setting aside a part of the real estate which it held for public purposes, that the said building might be erected thereon for certain educational purposes, and no matter what the terms were upon which its permission to the board of trustees to use this land was accepted either by the said board or Mr. Carnegie, what it did is to be regarded merely as a permission, granted under statutory authority, to use the land for a spe-

cific purpose. What it so set aside could neither be incumbered nor conveyed by the party licensed to use it, and no lien of a mechanic could bind it. To what the owner of a base or qualified fee may be compelled to subject his estate is but an academic question in this proceeding, for the title to the land remained in the city. Evidently entertaining this view, the learned president judge of the court below sustained the lien as good against.the building. He carefully avoids any reference to it as attaching to the land. On the argument at the October Term of last year, of the appeal from the judgment for want of sufficient affidavits of defense, counsel for appellee urged that it be sustained, even if the land upon which the building was erected was not owned by the board of trustees, because the lien was enforcible against the building under sec. 38 of the act of June 4, 1901. Upon consultation we entertained grave doubts as to the constitutionality of that section, in view of the seventh section of the third article of the constitution, which prohibits any special legislation "providing or changing methods for the collection of debts, or the enforcing of judgments," and, on our own motion, directed a reargument, that we might consider and pass upon that question, for if the lien is not enforcible, it is inoperative. It is no lien: Foster v. Fowler, 60 Pa. 27.

The thirty-eighth section of the act of 1901 is as follows: "Any claimant for an entirely new erection and construction of a structure or other improvement, having recovered judgment upon his claim, may, except where the property named is essential to the business of a quasi-public corporation, file a petition in the court in which such claim is filed, setting forth that the party contracting for the structure or other improvement was not capable of binding the land, has forfeited or otherwise lost all interest therein, that the prior estate, charges and encumbrances exceed the value of the land, or that, by reason of any other facts in said petition averred, it is advantageous to the lien claimants that the structure or other improvement should alone be sold for the benefit of the claimants; whereupon a rule shall be granted upon all parties interested, having filed or being entitled to

file claims upon the defendants therein, and upon every person having an interest in the property, including the then owner and any ground-rent owner, mortgagee, lien claimant or encumbrancer, to show cause why the prayer of the petition should not be granted. From the pleadings, aided as to the material disputed facts, if any, by depositions or a hearing at bar, the court shall determine the questions raised; and if it is decided that it would be advantageous to the claimants to have the structure or other improvement alone sold, then the court shall enter a decree, upon equitable terms, that the land upon which the structure or other improvement stands shall be exonerated from the lien of the claims, and the structure or other improvements shall alone be sold to pay the claims, unless the owner shall, within a time fixed, pay all claims that have ripened into final judgment, and give approved security to pay all subsequent judgments recovered thereon, the lien of such claims to remain in the meantime; or, unless within such time he shall, by writing filed, agree to pay into court for the benefit of the claimants, and of himself in case of a surplus, the appraised value of the structure or other improvements, as determined by a majority of three appraisers, selected by the parties or appointed by the court. If the structure or other improvement is alone sold, only those who labored thereupon or furnished labor or other materials thereto, shall be entitled to come in on the fund realized at the sale, and the purchaser thereat shall have sixty days within which to remove the same from the land which was exonerated from the claim." This legislation goes far beyond any prior enactment relating to mechanics' liens. Nothing approaching likeness to it was upon our statutes at the time of the adoption of the present constitution. The right of a claimant to have a building sold, the sale carrying with it a right in the purchaser to remove the same from the land, is not limited to a case in which the party contracting for it is not capable of binding the land, but may be exercised whenever, for any reason, it is advantageous to the lien creditors that the structure alone shall be sold, and when the court so decides, the building becomes a

piece of property separate from the land of which it had formed a part. Mechanics' liens prior to the act of 1901 bound the land as well as the building erected on it, but by the thirty-eighth section of that act the building alone may be bound. From the proceeds of the sale of it, when ordered sold by the court, those only are to be paid who furnished labor or materials in its erection. The owner of the land must submit to the removal of the building from it, with the injuries incident to the removal, unless he pays, within a fixed time, all claims for labor and materials that have ripened into final judgment and gives approved security to pay all subsequent judgments recovered, or shall, by writing filed, agree to pay into court, for the benefit of the claimants, the appraised value of the structure or other improvement as determined by a majority of three appraisers selected by the parties or appointed by the court. It is difficult to conceive more drastic legislation upon the subject of mechanics' liens, and while unprohibited statutes relating to them had become a fixed system at the time of the adoption of the constitution of 1874, and that instrument does not interfere with the system, it does declare that the general assembly shall not pass any local or special law providing or changing methods for the collection of debts or the enforcing of judgments, and any special legislation for mechanics' lien creditors—a special class of creditors—for the collection of debts due them or the enforcement of judgments recovered by them is within the prohibition. The whole act of 1901 is legislation for a special class of creditors, some of the provisions of which are permissible because the constitution of 1874 did not intend to wipe out the system to which they relate; but those providing special methods or changing old ones for the collection of the debts due the special class of creditors or for the enforcement of judgments recovered by them are prohibited by the organic law. By no prior statute not disturbed by the constitution was there any such provision for the collection of a mechanic's lien debt or the enforcement of a judgment thereon, as is found in sec. 38 of the act of 1901, and as that section clearly falls within the spirit and reason of the

rule as laid down in Portland Cement Company v. Allison, 220 Pa. 382, and Vulcanite Paving Company v. Philadelphia Rapid Transit Company, 220 Pa. 603, we are required to declare it unconstitutional.

Judgment reversed.