## Anderson v. Martinez et al.

*Attachment—Wages—Board—Acts of May 8, 1876, April 10, 1905, and May 1, 1913.*

1. The act of assembly entitled "An act relating to boarding-housekeepers, and authorizing the attachment of wages of persons indebted for boarding," approved May 8, 1876, P. L. 139, as amended by the Acts approved April 10, 1905, P. L. 134, and May 1, 1913, P. L. 132, is unconstitutional as offending against the 7th section, article iii, of the Constitution, for it is an act which provides or changes the method for the collection of debts or enforcement of judgments, and is, therefore, forbidden special legislation.

*Practice, J. P.—Record—Hearing—Service.*

2. Where the record of a justice of the peace shows judgment against two defendants, without showing that service was made or attempted upon one of the defendants, and there is nothing to show that there was a hearing before the justice, exceptions to the record must be sustained and the judgment reversed.

*Certiorari.* C. P. Dauphin Co., June T., 1923, No. 329.

*John McI. Smith* and *Spencer Gilbert Nauman,* for garnishee and plaintiff in error.

Fox, J., Nov. 8, 1923.—Two exceptions have been filed to this record, viz.:

1. That the act of assembly entitled "An act relating to boarding-housekeepers and authorizing the attachment of wages of persons indebted for boarding," approved May 8, 1876, P. L. 139, as amended by the Acts approved April 10, 1905, P. L. 134, and May 1, 1913, P. L. 132, is violative of section 7, article iii, of the Constitution, in that it is a change of method for the collection of debts.

2. That the return of the justice is defective, in that it fails to show that a hearing was held in the case.

In this action, as disclosed by the record, the railroad company is made a co-defendant, although in the summons on file it is treated as a garnishee. We have no doubt it was intended to be treated as a garnishee, but counsel for the railroad company have in this proceeding attacked both the validity of the judgment and the attachment, which, we think, it had a right to do in the light of this record, and we, therefore, shall dispose of the case along both lines.

With respect to the first exception:

Such a proceeding by a boarding-housekeeper, as is authorized by the Act of 1876 and its amendments, was unknown to the common law, and we had no statutory authority for the same in this State prior to our Constitution of 1874. When the legislature in 1876 passed this method of collecting a debt for board it was new. It has been contended that because legislation with respect to mechanics' liens, giving a special method for securing and collecting debts to a special class, has been left to stand as constitutional, therefore, this law is constitutional. This is not a correct conclusion. For a long time prior to the adoption of the present Constitution, we had an established system with respect to mechanics' liens, and after the adoption of the Constitution, it was decided that this method was not disturbed or prohibited by the Constitution, but any attempt to expand the method or change it to a new one would be violative of the Constitution. In the case of Portland Cement Co. *v.* Allison, 220 Pa. 382, 384, the Supreme Court said: "Section 28, under which the writ of attachment was issued in the present case, does not come under the ban of prohibited local legislation, but it is a special law, because it only applies to a particular class of creditors; that is, those who supply labor or materials used

4 D. & C.

in the construction of a building. That it is a special remedy for a particular class of creditors seems to be conceded, but it is contended that this does not make it special in the constitutional sense. The principal argument made in support of this position is that all mechanics' lien laws relate to a special class of creditors, and it is argued if section 28 is held to be unconstitutional because it is a special law, all acts relating to mechanics' liens passed since the adoption of the new Constitution must be declared invalid for the same reason. The argument is plausible and forceful, but not convincing. This is not the test by which the Constitution is interpreted. It may be, that if the whole system of mechanics' lien laws had been introduced into our statutes in the first instance after the adoption of the new Constitution, the courts might have been compelled to hold that such acts come within the prohibited class of special legislation. Indeed, it is difficult to see how this result could have been avoided. We, however, are not confronted with such a question. For more than a century statutes relating to mechanics' liens have been passed by our legislature. The system grew up and became a fixed policy of our law long before there was any constitutional barrier against special legislation. This method of filing a lien and enforcing the collection of the debt thus secured had been provided by law in our State about seventy years before the new Constitution was adopted, and it is not conceivable that the framers of our fundamental law intended to disturb the old method of procedure relating thereto. The Constitution does not in terms undertake to do any such thing, and certainly no such implication can arise from any reasonable interpretation thereof. A fair construction of the Constitution leads to the conclusion that the intention of its framers was not to prohibit legislation relating to old methods for the collection of debts or the enforcing of judgments recognized and in general use at the time of its adoption, but to prevent the enactment of local and special laws providing new methods or changing old ones, and applicable only to particular localities or to special classes. The language of the Constitution is that no local or special law shall be passed 'providing or changing methods for the collection of debts or the enforcing of judgments.' This can only mean that the local or special legislation prohibited is such as provides new methods, not then in existence, or changes old methods, then existing, for these purposes. The mechanics' lien laws proper do not fall within this prohibition, because they do not provide a new method for the collection of a debt or the enforcing of a judgment. The procedure under these statutes is an old method. It is a proceeding *in rem*, well understood, and of general application at the time of the adoption of the Constitution." See, also, Lumber Co. v. Carnegie Institute, 225 Pa. 486.

The great weight of authorities in this State is against the constitutionality of this statute and its amendments, which do not materially alter the statute: Antreason v. Samarsien, 18 Dist. R. 335; Jenkins v. Davis, 18 Dist. R. 928; Michaels v. Cunningham, 20 Dist. R. 170; Railway Co. v. McMillan, 20 Dist. R. 327; Benner v. Smith, 21 Dist. R. 473; Penna. R. R. Co. v. Carr, 43 Pa. C. C. Reps. 282; Linahan v. Lawson, 24 Dist. R. 628; Schmidt v. Schmidt, 3 D. & C. 461, and Pennsylvania Co. v. Carr et al., 63 Pitts. L. J. 245.

We think, for the reasons given by the Supreme Court in the cases of Portland Cement Co. v. Allison and Lumber Co. v. Carnegie Institute, with respect to the offending aspects of sections 28 and 38 of the Mechanics' Lien Act of June 4, 1901, P. L. 431, this act, with its amendments, likewise offends against the 7th section, article III, of the Constitution, for it is an act which provides or changes the method for the collection of debts or enforcement of judgments, and is, therefore, special legislation.

With respect to the second exception:

It avers that the record does not disclose that there was a hearing, and, therefore, the return is defective and the judgment cannot be sustained. The pertinent language of the record is: "Summons issued defendants whereabouts unknown, judgment given in favor of Savannah Anderson, June 11, 1923, against Luis Martinez & Penna. Railroad Company for board and costs, amounting to $19.85." According to the record, both Martinez and Pennsylvania Railroad Company are made defendants, and the judgment is against both as such. There is nothing to show that service, or an attempt of service, was made upon the latter, and that there was a hearing. This is a clear violation of the 4th section of the Act of 1810, 2 Purd. Dig., 2109. In a uniform line of authorities, it is held that the record of the justice must show affirmatively, and it cannot be presumed, that evidence was given in support of the plaintiff's claim, otherwise judgment will be reversed: Young *v.* Getz, 6 Dist. R. 78, and the cases there cited.

For the reasons above given, the exceptions are sustained, the attachment of the moneys of the defendant, Luis Martinez, in the hands of the Pennsylvania Railroad Company is dissolved and the judgment is reversed.

**From Sidney E. Friedman, Harrisburg, Pa.**