The CARTER–JONES LUMBER
COMPANY, Appellant

v.

NORTHWESTERN PA HUMANE
SOCIETY

LGL Animal Care Products,
Inc., Appellant

v.

Humane Society of Northwestern
Pennsylvania.

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 2006.
Decided Dec. 29, 2006.

Stephen H. Hutzelman, Erie, for appellant, The Carter–Jones Lumber Company.

Michael A. Agresti, Erie, for appellee, Northwestern PA Humane Society.

BEFORE: FRIEDMAN, Judge, LEADBETTER, Judge, LEAVITT, Judge.

OPINION BY Judge LEADBETTER.

In these consolidated appeals, the court must decide whether the animal shelter constructed by the Humane Society of Northwestern Pennsylvania (Humane Society)[1] serves a purely public purpose, thereby rendering the shelter exempt from mechanics' liens under Section 303(b) of the Mechanics' Lien Law of 1963(Law),[2] 49 P.S. § 1303(b). The Carter–Jones Lumber Company (Carter–Jones) and LGL Animal Care Products, Inc. (LGL) argue that common pleas erred in finding that the shelter serves a purely public purpose.

We conclude that the Humane Society's shelter does serve a purely public purpose and, therefore, affirm the dismissal of the two complaints based on preliminary objections in the nature of a demurrer.

In *Carter–Jones Lumber Company v. Northwestern PA Humane Society* (Carter–Jones case),[3] the Humane Society hired Barnhart Builders as the general contractor for the construction of a new animal shelter. Carter–Jones sold building materials to Barnhart, which in turn used those materials in the construction of the shelter. When Barnhart did not pay for the materials, Carter–Jones filed a mechanics' lien in the amount of $26,338.29 against the Humane Society in May of 2004. Carter–Jones subsequently filed a complaint to enforce the mechanics lien against the Humane Society in November of 2004.[4] Humane Society thereafter filed a preliminary objection in the nature of a demurrer to the complaint, arguing that the construction of the shelter fell within the purely public purpose exception of the Law, exempting it from a mechanics' lien claim.[5]

In the Carter–Jones case, the uncontradicted testimony of Joseph Grizanti, the executive director for Humane Society, established the following facts concerning the Humane Society. The Humane Society is a private non-profit organization exempt from taxes under Section 501(c)(3) of the Internal Revenue Code. 26 I.R.C. § 501(c)(3). The Humane Society serves as an animal shelter for the fourteen coun-

---

1. The Northwestern PA Humane Society and the Humane Society of Northwestern Pennsylvania is the same entity.

2. Act of August 24, 1963, P.L. 1175, *as amended.* Section 303(b) provides as follows: "No lien shall be allowed for labor or materials furnished for a purely public purpose."

3. The Carter–Jones case, No. 14052 of 2004 in the Court of Common Pleas of Erie County, is docketed in this court at No. 868 C.D.2006.

4. The amount of the lien was later reduced to $14,686.58.

5. Humane Society also raised an objection based upon lack of specificity.

ties located in northwestern Pennsylvania. Any member of the public throughout this region can bring an animal to the shelter for care, certain medical attention, and possible adoption. The Humane Society requires anyone who adopts an animal to have it spayed or neutered. As a result, the Humane Society provides spaying and neutering services through a voucher system. Through this system, the Humane Society provides a $30.00 voucher to help defray the cost of spaying or neutering the adopted animal.

The Humane Society also serves as the primary means of controlling the pet population in the community. Unwanted or stray animals carrying diseases that affect humans pose a risk to the public's health. The Humane Society provides a safe place to take unwanted or stray animals that could carry diseases, posing a risk of infection to humans. According to Mr. Grizanti, the number of abandoned or stray animals would greatly increase without the Humane Society's shelter.

In addition to providing shelter, adoption, and neutering services, the Humane Society also houses, operates, and funds a substantial portion of the Animal Cruelty and Investigation Unit for Erie County. This unit enforces the animal cruelty laws of both the Commonwealth and local government. The Humane Society provides its own officers who take a sworn oath of office administered by a judge. These officers are trained by the Commonwealth to work closely with local law enforcement agencies. They assist in preventing the abuse, neglect, and cruelty to domestic animals, including farm animals. In March of 2005, the Humane Society had two full-time officers and one unfilled part-time position. According to Mr. Grizanti, if the Humane Society did not operate this investigatory unit, the responsibility for enforcing the cruelty laws would be borne by the Commonwealth and local law enforcement agencies, which do not have the current resources to adequately enforce such laws.

The Humane Society sustains its operations through philanthropic contributions, memorial donations, and unsolicited contributions from the public. The Humane Society also receives $40,000.00 from the County of Erie to supplement the operation of the Animal Cruelty and Investigation Unit. Pet adoptions and intake fees provide the only revenue that the Humane Society generates. The Humane Society charges $50.00 as its adoption fee and $20.00 as its intake fee. With respect to intake fees, if the person bringing in the animal cannot afford the intake fee, the Humane Society waives it. This revenue accounts for approximately 15% of the annual costs of the shelter's operational expenses.

In the Carter–Jones case, after hearing the testimony of Mr. Grizanti and arguments by both parties, Judge Cunningham found that the Humane Society serves a purely public purpose and, consequently, is exempt from mechanics' liens pursuant to Section 303(b) of the Law. Therefore, Judge Cunningham issued an order granting the Humane Society's preliminary objection. Carter–Jones then filed a Notice of Appeal and a Statement of Matters Complained of on Appeal. In June of 2005, Judge Cunningham issued an opinion in support of his order. In his opinion, Judge Cunningham concluded that the Humane Society's shelter was constructed for a purely public purpose, that the Humane Society serves a governmental function, and that the Humane Society provides its public services without profit motive. He also noted that enforcing Carter–Jones's mechanics' lien "would disrupt an essential public service or function should it result in the sale of the shelter." *The Carter–*

*Jones Lumber Company v. Northwestern Pennsylvania Humane Society* (No. 14052 of 2004, C.C.P of Erie County, filed June 8, 2005), slip op. at 6. Carter–Jones appealed Judge Cunningham's order to the Superior Court, which then transferred the case to this court.

In *LGL Animal Care Products, Inc. v. Humane Society of Northwestern Pennsylvania* (LGL case),[6] Barnhart Builders hired LGL as a subcontractor to supply labor and materials in the construction of new kennels for the new shelter. Barnhart Builders also failed to pay LGL for its labor and materials. LGL, therefore, filed a mechanics' lien in the amount of $24,816.00 against the Humane Society in September of 2004. LGL subsequently filed a complaint against the Humane Society in May of 2005, seeking to enforce its lien.

In response, the Humane Society filed a preliminary objection to LGL's complaint, alleging that LGL's mechanics' lien was invalid because the Humane Society serves a "purely public purpose" and is consequently exempt from the mechanics' lien. In support, the Humane Society referenced Judge Cunningham's prior order in the Carter–Jones case, wherein he concluded that the Humane Society serves a purely public purpose and, therefore, is exempt from mechanics' liens pursuant to Section 303(b) of the Law. After hearing arguments on the issues presented, Judge Anthony entered an order in December of 2005, sustaining Humane Society's preliminary objection in the nature of a demurrer and dismissing LGL's action. In doing so, Judge Anthony adopted Judge Cunning-

ham's reasoning in the Carter–Jones case. LGL subsequently appealed to this court.

■■■ In these appeals, we consider a pure question of law and, therefore, our review is plenary. *Banacol Mktg. Corp. v. Penn Warehousing & Distrib., Inc.*, 904 A.2d 1043, 1046 n. 5 (Pa.Cmwlth.2006). "In ruling on preliminary objections, a court must accept as true all well-pleaded material allegations in the [complaint], as well as all inferences reasonably deduced from them." *Id.* at 1046. "Preliminary objections in the nature of a demurrer should be sustained only where the pleadings are clearly insufficient to establish a right to relief; any doubt must be resolved in favor of overruling the demurrer." *Boyd v. Rockwood Area Sch. Dist.*, 907 A.2d 1157, 1163 n. 8 (Pa.Cmwlth.2006).

As noted above, Section 303(b) of the Law provides that, "No lien shall be allowed for labor or materials furnished for a purely public purpose." We therefore must decide whether Humane Society's shelter serves a purely public purpose so as to qualify for the Section 303(b) exception. What constitutes a "purely public purpose" is not defined in the statute,[7] and there is very limited caselaw addressing the subject.

■■■ In determining whether entities are exempt from mechanics' liens pursuant to Section 303(b), the courts of this Commonwealth have looked to a number of factors. We first note that the status of the Humane Society as a private entity is not dispositive of the issue of whether a mechanics' lien may attach. *See McNulty Bros. Co. v. Pennsylvania R.R. Co.*, 272

---

**6.** The LGL case, No. 13331 of 2004 in the Court of Common Pleas of Erie County, is docketed in this court at 1273 C.D.2006.

**7.** Section 303(b) appeared in Section 2 of the prior Mechanics' Lien Law, the Act of June 4, 1901, P.L. 431, 49 P.S. § 22. That act was

repealed by the Act of August 24, 1963, P.L. 1175. Neither the legislative history of the Law, nor the legislative history of the prior Mechanics' Lien Law, provides guidance into the meaning of "purely public purpose."

Pa. 442, 116 A. 362 (1922) (holding that the property owned by railroad company, a public service corporation, was not subject to a mechanics' lien); *Pennsylvania Electric Equipment Co. v. Phoenixville Hosp.*, 37 Pa.C.C. 671 (Chester County 1910) (holding that the hospital served a purely public purpose and, therefore, was exempt from mechanics' liens). The factors they have considered are (1) the public's access to the services provided by the entity, (2) whether the entity's function with respect to the property is a governmental function or a proprietary function, (3) whether the entity operates with the possibility or motive of profit, and (4) whether allowing execution upon the liens would disrupt an essential public service.

In *Henry Taylor Lumber Company v. Carnegie Institute*, 225 Pa. 486, 74 A. 357 (1909), the Pennsylvania Supreme Court addressed whether a technical school was exempt from mechanics' liens. There, the court focused on whether the public enjoyed the benefits of a technical school by right in determining whether the school was used for a purely public purpose. The court noted that the technical school was not open to everyone, charged tuition, was supported entirely by private funds, and was managed by a board of trustees. Discussing the meaning of the phrase "for public use," the court stated:

> The test whether a use is public or not is whether a public trust is imposed upon the property, whether the public has a legal right, which cannot be gainsaid, or denied, or withdrawn, at the pleasure of the owner. A particular enterprise, palpably for private advantage, will not become a public use because of the theoretical right of the public to use it. The question is whether the public have a right to the use. The general public must have a general and fixed use of the property, a use independent of the will of the private person or corporation in which the title is vested, a public use which cannot be defeated by the private owner, but which is guarded and controlled by the law.

*Id.* at 490, 74 A. at 358 (quotation omitted). Based upon the foregoing, the court commented, "Under these circumstances, it seems to us the public enjoys the benefits of the school, not by right, as it should if the purpose was public, but by permission only." *Id.* at 490, 74 A. at 358. As a result, the court concluded that the technical school did not serve a purely public purpose and consequently was subject to the mechanics' lien. *See also J.B. Ewrell Co. v. The Philadelphia Electric Co.*, 5 Phila. Co. Rptr. 230 (1980) (holding that because the public did not enjoy the benefit of an electric company's maintenance shop by right, electric company could not avail itself of the Section 303(b) exception).

 In addition, a factor critical to the determination of whether the Humane Society's shelter serves a purely public purpose is the manner in which the Humane Society uses the property. In *American Seating Company v. City of Philadelphia*, 434 Pa. 370, 256 A.2d 599 (1969), the Pennsylvania Supreme Court considered whether a sports arena owned by the City of Philadelphia was exempt from a mechanics' lien. In that case, the prospective tenant of the arena and the City had entered into a contract whereby the tenant agreed to construct the arena, paying the entire cost of construction. In return, the tenant was to remain in possession for a term of fifty years with an option to renew the lease for an additional term of fifty years and was entrusted with the management and control of the arena. Title to the land on which the arena was to be built and the building itself remained with the City. In deciding the issue, the court stated as follows:

[I]t seems to us that a meaningful ground for distinction rests in the use to which the municipality puts the property. Where, as here, the municipality acts as an absent landlord, entrusting the management and control of its premises to its tenant; and where the building was constructed and paid for by the tenant; and further, where the municipality in owning the building, discharges a function not governmental in nature, but rather proprietary and quasi-private;—then an exception to the general rule that municipal property is exempt from mechanics' liens seems proper.

434 Pa. at 375, 256 A.2d at 601. The court concluded that the City, in its capacity as the owner of the arena, served a proprietary function rather than a public function. The court opined, "Since an execution upon the lien would not disrupt an essential public service or function, no reason appears for striking the lien down." Id. Thus, the court held that the City was not exempt from the mechanics' lien.

The court in Empire Excavating Company v. Luzerne County Housing Authority, 303 Pa.Super. 25, 449 A.2d 60 (1982), also found the function for which the property was used, and the presence of a profit motive, to be dispositive. That case involved a mechanics' lien filed against low income housing units constructed by a housing authority, and the Pennsylvania Superior Court examined whether the authority's function with respect to the construction of the low income housing was a governmental function or a proprietary function. In making this determination, the court focused on whether the services the authority provided served the public and whether the authority operated without a profit motive. The court noted that it is "clear that the providing of safe and sanitary dwelling accommodations for persons of low income through new construction or the reconstruction, restoration, reconditioning, remodeling or repair of existing structures by public housing authorities are public purposes." Id. at 61. The court also observed that, "Municipal Authorities are public bodies created without any motive or possibility of private profit. Any rentals of a public housing authority are fixed so as to cover the expense of the Authorit[y's] bonds, operations and administration. As such they are created with no motive of private, economic gain." Id. Based on the foregoing, the court distinguished that case from American Seating, stating, in pertinent part:

In American Seating, the court held that the City of Philadelphia was involved in a proprietary function in its leasing of the Philadelphia Spectrum, a sports and entertainment complex, to a private developer. Under the terms of the lease potential profit could inure to the City. In our case no such circumstances exist.

Id. Thus, the court held that the housing authority's use of the property to provide low income housing constituted a public use of that property and, therefore, a mechanics' lien filed against a housing authority would be invalid.[8]

In the present case, the Humane Society provides the primary means for controlling the animal population by sheltering, adopting, and spaying and neutering animals. All members of the public can avail themselves of these services. The Humane Society's control of the animal population serves to keep stray and unwanted ani-

---

8. The mechanics' lien against the authority was held valid for a different reason, however. At the time the lien was filed, title to the property was still in the contractor's name. Thus, although the authority qualified for the Section 303(b) exception, it ultimately did not benefit from that exception.

mals, which could potentially carry disease and pose a risk to the public's health, off the streets. If the Humane Society did not provide these services, then the Commonwealth, Erie County, or some municipality would be forced to provide similar, if not identical, services to protect the health, safety, and general welfare of the public.

In addition, the Humane Society houses, operates, and funds a substantial portion of the Animal Cruelty and Investigation Unit for Erie County. This unit enforces the animal cruelty laws of Pennsylvania, as well as local ordinances. It is undisputed that Erie County has delegated the duty of enforcing the animal cruelty laws to the Humane Society. The Humane Society receives $40,000.00 from the County of Erie to supplement operation of the unit. Clearly, the public has an absolute right to the Humane Society's law enforcement services. If the Humane Society did not provide such services, then the burden and responsibility for enforcing the cruelty laws would fall upon the Commonwealth and local law enforcement agencies.

Furthermore, the Humane Society operates without any motive of private, economic gain. Rather, the Humane Society is a non-profit organization that sustains its operations through government subsidy, philanthropic contributions, memorial donations, and unsolicited contributions from the public. The limited revenues that the Humane Society generates cover only 15% of its operating expenses.

Finally, allowing execution upon the liens would disrupt the essential public services that the Humane Society provides. After weighing the four relevant factors—public access, governmental/proprietary function, profit motive, and disruption of essential services—we conclude that the Humane Society's shelter serves a purely public purpose pursuant to Section 303(b) and, as a result, is exempt from the mechanics' liens filed by Carter–Jones and LGL. Accordingly, we affirm the dismissal of the two complaints based on preliminary objections in the nature of a demurrer.

## ORDER

AND NOW, this 29th day of December, 2006, the orders of the Court of Common Pleas of Erie County in the above captioned cases are hereby AFFIRMED.