**CORNERSTONE LAND DEVELOPMENT COMPANY OF PITTSBURGH LLC, Appellant**

v.

**WADWELL GROUP, A Pennsylvania Partnership and Marshall Township Municipal Sanitary Authority, Appellees.**

Superior Court of Pennsylvania.

Argued Aug. 19, 2008.

Filed Oct. 28, 2008.

Richard A. Swanson, Pittsburgh, for appellant.

BEFORE: LALLY–GREEN, TAMILIA and COLVILLE *, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Cornerstone Land Development Company of Pittsburgh (Cornerstone) appeals the June 12, 2007, Orders striking its mechanics' lien claim and sustaining appellees' respective preliminary objections in the nature of demurrers. We *sua sponte* consolidated the appeals.

¶ 2 The facts of this case as gleaned from Cornerstone's mechanics' lien claim are as follows. At some point, appellees Wadwell and "authorized representatives" of appellee Marshall Township Municipal Sanitary Authority (MTMSA) hired Cornerstone to supply labor and materials for the construction of a sewage pumping station in Marshall Township. The pump station was designed to transport sewage from houses situated in the basin of the Willow Brook Estates housing development up to public gravity sewage lines. Wadwell owned the land for the pump

station construction when Cornerstone was hired, and it financed the construction with its own funds. In August of 2006, Cornerstone commenced work on the station. On or about October 20, 2006, Wadwell conveyed the pump station and the land beneath it to MTMSA pursuant to the terms of a pre-existing agreement. On December 7, 2006, Cornerstone completed work on the pump station but when Cornerstone demanded payment for the work, payment was refused. On March 29, 2007, Cornerstone filed its mechanics' lien claim against the pump station. On April 11, 2007, Wadwell *demurred* to the claim alleging, in pertinent part, that no lien could attach to property being used purely for a public purpose; MTMSA followed suit on June 11, 2007. The lower court agreed with the premise of appellees' respective demurrers, and the Orders subject to appeal followed. Cornerstone was directed to file a Rule 1925(b) statement on July 10, 2007; it complied expeditiously and on October 1, 2007, the lower court issued an Opinion discussing the dismissal of Cornerstone's claim. *See generally*, Pa.R.A.P.1925, **Opinion in Support of Order.**

¶ 3 We begin with our standard and scope of review:

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining

* Retired Senior Judge assigned to the Superior Court.

the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.

*Philadelphia Constr. Servs., LLC v. Domb*, 903 A.2d 1262, 1266 (Pa.Super.2006), *quoting Wentzel–Applewood Joint Venture v. 801 Mkt. St. Assocs., LP*, 878 A.2d 889, 892 (Pa.Super.2005), appeal denied 587 Pa. 707, 897 A.2d 1184 (2006) (additional citation omitted).

¶ 4 This controversy centers on the following provision of the Mechanics' Lien Law: "No lien shall be allowed for labor or materials furnished for a purely public purpose." 49 P.S. § 1303, **Lien not allowed in certain cases, (b) Public purpose.** The lower court found that because the pumping station is used for a "purely public purpose," Cornerstone's lien could not attach, irrespective of the fact that Cornerstone commenced work on the station before the station was conveyed to MTMSA in October of 2006.

¶ 5 Cornerstone raises two issues for our consideration:

I. Does the "purely public purpose" exemption from mechanics' lien claims apply when a sewage pump station is constructed on private property by a private developer, who conveys the property to a municipal authority before construction is complete?

II. Does the conveyance of a property before the filing of a mechanics' lien claim destroy the claim when the work is for "erection and construction?"

Appellant's brief at 4.

¶ 6 Cornerstone first argues that when it commenced work on the pump station, the station was situated on privately owned property and, as such, its claim is valid pursuant to *Empire Excavating Co. v. Luzerne County Housing Authority,* 303 Pa.Super. 25, 449 A.2d 60 (1982), and caselaw from other jurisdictions that have "purely public purpose" lien attachment exemptions. Conversely, appellees contend Cornerstone's focus on the private-entity status of Wadwell is irrelevant because "even property owned by a private entity may be immune from liens if it is used for a public purpose." Appellees' brief at 4, *citing Carter–Jones Lumber Co. v. Northwestern Pennsylvania Humane Society,* 913 A.2d 1002 (Pa.Cmwlth.2006), *appeal denied* 594 Pa. 682, 932 A.2d 1290 (2007). Appellees further contend the focus of *Empire* was when the lien was filed—during a period of ownership by a private entity or during a period of ownership by a public entity subsequent to transfer—not who owned the property when the work commenced. *Id.* at 7.

¶ 7 In *American Seating Co. v. Philadelphia,* 434 Pa. 370, 256 A.2d 599 (1969), our Supreme Court stated:

Although our research has disclosed no case explicitly holding that in every instance liens against municipal properties are void, still the statement seems correct as a general proposition of Pennsylvania law.

However, it seems to us that a meaningful ground for distinction rests in the use to which the municipality puts the property. Where, as here, the municipality acts as an absent landlord, entrusting the management and control of its premises to its tenant; and where the building was constructed and paid for by the tenant; and further, where the municipality in owning the building, discharges a function not governmental in nature, but rather proprietary and quasi-private;—then an exception to the general rule that municipal property is exempt from mechanics' liens seems proper. Since an execution upon the lien would not disrupt an essential public

service or function, no reason appears for striking the lien down.

*Id.* at 601. The Court, in rendering this statement, harmonized the common law of liens with the Mechanics' Lien Law of 1963. *See id.* at 600–601, *citing Henry Taylor Lumber Co. v. Carnegie Inst.,* 225 Pa. 486, 74 A. 357 (1909).

¶ 8 In *Empire, supra,* the claimant filed a lien and, subsequently, the attached property was conveyed to the Luzerne County Housing Authority. *Id.* at 60, 62. The lower court found in favor of the claimant. On appeal, the Court examined the validity of the lien by looking at two factors. First, the Court acknowledged "as a general rule, a Mechanics' Lien filed against municipal property is invalid." *Id.* at 61. The Court did, however, acknowledge the *American Seating* "private use" exception to this general rule, but concluded it was inapplicable. *Id.* The Court then looked to "whether the property against which the lien was filed was the property of the contractor ... or the property of the housing authority at the time of the entry of the mechanics' lien." *Id.* After concluding the claimant had filed the lien against private property, i.e. prior to the conveyance to the Authority, this Court affirmed and held the lien valid. *Id.* at 62, 449 A.2d 60.

■ ¶ 9 Commonwealth Court caselaw holds that the section 1303(b) public use exemption can apply in situations where a project is owned by a private entity when a lien is filed, but is nevertheless used for purely public ends. *Carter–Jones Lumber, supra* at 1005–1006 ("We first note that the status of the Humane Society as a private entity is not dispositive of the issue of whether a mechanics' lien may attach."), *citing McNulty Bros. Co. v. Pennsylvania R.R. Co.,* 272 Pa. 442, 116 A. 362 (1922). The factors the Commonwealth Court considers in determining whether the exemption applies include: 1) the public's access

to the services provided by the project; 2) whether the project is used to serve governmental or proprietary ends; 3) whether the project operates with the possibility of, or motive for, profit; and, 4) whether allowing execution on the project would disrupt an important governmental service. *Id.* at 1006. The Commonwealth Court's suggestion that private ownership status, in of itself, will not work to defeat the public use exemption is consistent with the common law. In *Foster & Co. v. Fowler & Co.,* 60 Pa. 27 (1869), our Supreme Court held that a lien filed against a engine pumping-house owned and operated by a privately held entity, the Monongahela Water Company, was invalid because the pumping-house was used to supply water to the citizens of Birmingham, East Birmingham, and south Pittsburgh. *Id.* at 30–31.

■ ¶ 10 Given this caselaw, our inquiry is a narrow one—what was the use of the pump station when Cornerstone filed its lien? As discussed above, the *American Seating* Court offered guidance as to what factors are relevant in deciding whether a use is purely public. These factors include: 1) whether the government or a private entity managed and controlled the attached property when the lien was filed; 2) whether the property was constructed and paid for by a private entity; 3) whether the property was being used to further proprietary motives when the lien was filed; and, most importantly, 4) whether execution on the lien would disrupt an essential public service. *Id.* at 601. The test enunciated by the Commonwealth Court in *Carter–Jones Lumber* relies on a similar set of factors.

¶ 11 In this case, the pump station was managed and controlled by the MTMSA, not Wadwell, when Cornerstone filed the lien. Record, No. 1, Mechanics' Lien Claim, at ¶¶ 4–5. Moreover, the pump

station was being used to further public ends when the lien was filed. While the MTMSA collects fees for the use of the station, there is no indication in Cornerstone's claim or in the certified record that the pump station itself was ever operated for profit-either by the MTMSA or Wadwell. The MTMSA is a municipal authority organized "to benefit the people of the Commonwealth," not a private entity organized for a profit motive. 53 Pa.C.S.A. § 5607, **Purposes and powers,** (b)(2) **Limitations.** Municipalities are prohibited from "unnecessarily burden[ing] or interfer[ing] with existing business by the establishment of competitive enterprises," with limited exceptions—none of which are applicable. *Id.* The most important *American Seating* factor also favors appellees' position. *See id.* at 601 ("Since an execution upon the lien would not disrupt an essential public service or function, no reason appears for striking the lien down."). If Cornerstone's lien were permitted to attach and Cornerstone were permitted to execute, an essential public service—the sanitary maintenance of both land situated in a residential area and the ground water that runs beneath this land—would be disrupted. Cornerstone has no motive to incur the cost of operating the pump station while waiting to realize its value. More importantly, there is no evidence Cornerstone has the experience and requisite skill to operate a sewage pump station. *See* 25

Pa.Code § 303.12, **Sewage treatment plant operators;** *id.* at § 303.14, **Experience allowances.** The only factor in any of the relevant caselaw which favors Cornerstone is that Wadwell constructed the pump station with its own funds. This factor alone, however, is not enough to justify disturbing the lower court's ruling. The cases Cornerstone cites from other courts and jurisdictions do not persuade us otherwise. In each one of these cases, the liens under consideration were held valid because they were filed while the projects subjects thereto were owned by private interests, not public interests.[1] Again, Cornerstone's lien was filed after the pump station already was owned by the MTMSA, a public entity.

¶ 12 Anticipating this conclusion, Cornerstone argues that its lien took effect and had priority "as of the date of the visible commencement upon the ground of the work of erecting or constructing" the pump station pursuant to 49 P.S. § 1508(a), **Priority of lien.** Appellant's brief at 14, n. 3. This argument obscures the concept of attachment with the concept of priority. The question in this case is whether Cornerstone's lien could attach to the pump station when it was filed. If the lien did so attach, there is no question it would have priority as outlined in section 1508(a).

---

1. *Armstrong v. United States,* 364 U.S. 40, 42, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960) ("We cannot agree that a mere prospect that property will later be owned by the United States renders that property immune from otherwise valid liens."); *Rawick Mfg. Co. v. Talisman, Inc.,* 17 Ark.App. 202, 706 S.W.2d 194, 195 (1986) ("Rawick contends the project was privately owned and funded during the period it supplied materials for the project's construction, and its materialman's lien validly attached and could not be impaired by Phillips' subsequent sale of the turnkey project to the Housing Authority.... We believe Rawick's

argument unquestionably is correct."); *Home Bldg. Corp. v. Ventura Corp.,* 568 S.W.2d 769, 776 (Mo.1978) ("The court held that the lien attached before the irrigation districts acquired the property and that the liens were not affected or defeated by the subsequent conveyance to the districts.... The reasoning in the foregoing cases is sound.... It would be unjust to permit a municipality, by purchasing property which is subject to claims for mechanic's lien rights, to defeat those liens simply because the property has been acquired for municipal purposes.") (internal citations omitted).

¶ 13 Cornerstone next argues the "only instance where a conveyance prior to the filing of a lien destroys the lien is when the work relates to 'alteration and repair' and the property is conveyed in good faith and for valuable consideration" pursuant to 49 P.S. § 1303(c), **Conveyance prior to lien.** Appellant's brief at 15. Cornerstone points out that construction of the pump station is not "alteration and repair" under the Mechanics' Lien Law but, rather, is appropriately defined as "erection and construction". *See* 49 P.S. 1201, **Definitions.** Cornerstone concludes the General Assembly must have intended that the conveyance of a public project to a public entity does not interfere with the filing of erection and construction mechanics' liens against the project after the conveyance. Appellant's brief at 15. In support of this conclusion, Cornerstone invokes the principle of *"inclusio unius est exclusio alterius,"* a canon of statutory construction which provides that the expression or inclusion of one thing in a statute implies the exclusion of an alternative. *See e.g., Commonwealth v. Ostrosky,* 589 Pa. 437, 909 A.2d 1224, 1229 n. 7 (2006), *citing* **Black's Law Dictionary** 265 (2d Pocket Ed.2001) (additional citation omitted); *see also* 1 Pa.C.S.A. § 1924, **Construction of titles, preambles, provisos, exceptions and headings.**

■ ¶ 14 Cornerstone's argument does not persuade us reversal is appropriate. Cornerstone presupposes Wadwell's conveyance of the pump station to the MTMSA, in of itself, destroyed the lien. This is not so. Rather, the manner in which the pump station was being used when Cornerstone filed its lien exempted the station from attachment. Certainly, if Wadwell still owned the pump station when the lien was filed, Cornerstone's argument would be more persuasive under *American Seating.* But our task in this case is not to hypothesize what could have happened in an attempt to create a statutory discrepancy; our task is to analyze what did happen.

■ ¶ 15 Next, Cornerstone argues the validity of its lien "is supported by the public policy embodied in the Public Works Contractors' Bond Law," which "provides a substitute remedy on public works for persons who supply labor and materials and who are excluded from the protections afforded by the Mechanics' Lien Law under 49 P.S. § 1303(b)." Appellant's brief at 16 (citation omitted). Cornerstone did not raise this argument in the brief it filed in opposition to appellees' preliminary objections, or in its statement of questions involved on appeal. The issue is waived. Pa.R.A.P. 302, **Requisites for reviewable issue,** (a) **General rule** ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."), *accord* Pa.R.A.P. 2116, **Statement of Questions Involved,** (a) **General rule** ("The statement of the questions involved must state the question or questions.... This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby."). Even if the argument had been preserved, Cornerstone conspicuously fails to mention that the Public Works Contractors' Bond Law (PWCBL) offers protection to subcontractors, not prime contractors. *Valley Forge Indus., Inc. v. Armand Constr., Inc.,* 248 Pa.Super. 53, 374 A.2d 1312, 1315 (1977) (noting the PWCBL, *inter alia,* "provides a substitute remedy for subcontractors who supply labor and materials and who are excluded from the protections afforded by the Mechanics' Lien Law of 1963.") (citation omitted); *see also* 8 P.S. 193.1, **Financial security required; sureties; filing.** Cornerstone's claim gives no indication it was a subcontractor on the pump station, and Cornerstone does not

allege it was a subcontractor in its brief. Rather, Cornerstone's claim states it was hired to complete "construction" of the pump station for Wadwell, who was the owner of the station at the time. Record, No. 1, Mechanics' Lien Claim, at ¶¶ 4, 6; *see also* Record, No. 7, Brief in Opposition to Preliminary Objections to Mechanics' Lien Claim, at 8 ("... Cornerstone alleges that it was contractor for the owners.").

■ ¶ 16 Cornerstone's final argument is that the General Assembly intended the section 1303(b) public use exemption to apply only in situations where the sole purpose for the project at issue is public. Cornerstone concludes the purpose behind the pump station was not "purely public" because: "The improvements were constructed by a private developer on private property for private gain." Appellant's brief at 18.

¶ 17 The success of this argument, which is merely a variation of the first argument raised, is dependent on our willingness to accept semantic distinctions incapable of practical application. Cornerstone points out, "Without [a] private purpose, the [pump station] never would have been constructed in the first place." Appellant's brief at 18. Of course, all public improvements serve private interests on some level—the mother who drives her children to a public school on a public street has a private interest in ensuring her child receives an education, and so on. Our case law, common sense, and logic give context to the words "public" and "private." In this context, it is clear the distinction between the terms is predicated on whether the project at issue is being used for a "proprietary" gain, not whether third-party individuals somehow enjoy private benefit from a project intended to serve the public interest. *American Seating Company, supra* at 601; *Empire, supra* at 60 ("Thus, the question as to whether the mechanics' lien filed by Empire is valid depends upon whether the Authority's function with respect to the instant project was a governmental function or a proprietary one.").

¶ 18 While we admit this case, like so many others which come before this Court, is a vehicle in which a vague notion of equity could blindly be advanced, it is important to recognize three points. First, mechanics' liens are extraordinary remedies, and similar liens are not available to the vast majority of plaintiffs. *Domb, supra* at 1267. Second, Cornerstone is not without remedy; it is free to pursue a civil claim based on any number of causes of action. The certified record contains an answer and new matter drafted on behalf of Wadwell and the MTMSA and dated July 5, 2007, responding to claims of breach of contract, breach of implied contract in fact, promissory estoppel, and unjust enrichment purportedly raised in a complaint filed by Cornerstone. Record, No. 15. Third and finally, Cornerstone concedes in its mechanics' lien claim that it was aware from the outset that the MTMSA was involved with the pump station project. Record, No. 1, at ¶ 6.

¶ 19 Unquestionably, Cornerstone would prefer the swift remedy that a mechanics' lien would provide, assuming, of course, that the pump station has fair market value which could be realized upon execution. Nonetheless, our General Assembly has determined the public's interest in the continued vitality of a public work supersedes the private interest a contractor or subcontractor may have in obtaining a swift remedy.

¶ 20 Orders affirmed.